# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNATHAN LAMB and JIM BELMONT, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | **CLASS AND COLLECTIVE ACTION** |
| | ) | |
| JEFF RUBY CULINARY ENTERTAINMENT, INC., THE PRECINCT, INC., CARLO & JOHNNY'S, LTD., JEFF RUBY STEAKHOUSE, LLC, JEFF RUBY'S COLUMBUS, LLC, JEFF RUBY'S STEAKHOUSE LEXINGTON, LLC, JEFF RUBY'S LOUISVILLE, LLC, and JEFF RUBY'S NASHVILLE, LLC, d/b/a JEFF RUBY CULINARY ENTERTAINMENT, | ) ) ) ) ) ) ) ) ) ) ) ) | **CASE NO. 3:25-cv-00949**<br><br>**MAGISTRATE JUDGE HOLMES** |
| | ) | |
| *Defendants*. | ) | |

## JOINT STIPULATION OF CLASS ACTION SETTLEMENT

**IT IS HEREBY STIPULATED**, by and between Plaintiffs Johnathan Lamb and Jim Belmont, on behalf of themselves and the FLSA Opt-In Plaintiffs and Class Members, on the one hand, and Defendants Jeff Ruby Culinary Entertainment, Inc., The Precinct, Inc., Carlo & Johnny's, Ltd., Jeff Ruby Steakhouse, LLC, Jeff Ruby's Columbus, LLC, Jeff Ruby's Steakhouse Lexington, LLC, Jeff Ruby's Louisville, LLC, and Jeff Ruby's Nashville, LLC (collectively "Defendants"), on the other hand, and subject to the approval of the Court, and without any admission of liability or wrongdoing by Defendants, that the above-captioned civil action (the "Action") is hereby being compromised and settled, solely for the purpose of avoiding further expense, inconvenience and the distraction of burdensome and protracted litigation, pursuant to the terms and conditions set forth in this Joint Stipulation of Class Action Settlement and that the

Court shall enter a dismissal of all claims with prejudice, subject to the continuing jurisdiction of the Court as set forth below, subject to the definitions, recitals and terms set forth herein which by this reference become an integral part of this Agreement:

## DEFINITIONS

1.  "Agreement" means this Joint Stipulation of Class Action Settlement.

2.  "Action" means *Lamb, et al. v. Jeff Ruby Culinary Entertainment, Inc., et al.*, Case No. 3:25-cv-00949 pending in the United States District Court for the Middle District of Tennessee.

3.  "Ohio Action" means *Lamb, et al. v. Jeff Ruby Culinary Entertainment, Inc., et al.*, Case No. 1:24-cv-00097-DRC filed in the United States District Court for the Southern District of Ohio, Western Division.

4.  "CAFA Notice" means the notice required pursuant to 28 U.S.C § 1715(b).

5.  "Claim Form" means the form to be completed by any Class Members who want to receive proceeds from the Settlement in the form attached as Exhibit A.

6.  "Class Counsel" means David Garrison, Joshua Frank, and Nicole Chanin of Barrett Johnston Martin & Garrison PLLC and Robert DeRose of Barkan Meizlish DeRose Cox, LLP.

7.  "Class Counsel's Fee" means attorneys' fees for Class Counsel's litigation and resolution of this Action and their litigation expenses incurred in connection with the Action, paid from the Gross Settlement Fund.

8.  "Class Information" means information regarding Plaintiffs, FLSA Opt-In Plaintiffs, and Class Members that Defendants and Plaintiffs will have already compiled in good faith from their records and provide to the Settlement Administrator. The Class Information shall be formatted as a Microsoft Excel spreadsheet and shall include: Full legal names; last known

mailing address(es); last known email address(es); last known telephone number(s); and Social Security Numbers. The Class Information is strictly confidential and proprietary, and the Settlement Administrator shall maintain all Class Information in strict confidence under commercially reasonable security measures and may not disclose the Class Information to any person, except as expressly required by law or the provisions of this Agreement, other than Defendants' Counsel and Class Counsel.

9.      "Class Members" means all members of the Ohio and the Kentucky Rule 23 State Law Classes (who are listed on Exhibit B along with their Individual Settlement Amounts).

10.     "Class Period" means the following: the Class Period for Class Members employed in Ohio shall be from September 12, 2021 to the date the Named Plaintiffs and Defendants fully execute this Agreement; and the Class Period for Class Members employed in Kentucky shall be from February 27, 2019 to the date the Named Plaintiffs and Defendants fully execute this Agreement.

11.     "Class Representative Service Awards" means the amount that the Court authorizes to be paid to the Named Plaintiffs Jim Belmont and Johnathan Lamb, in addition to their Individual Settlement Amount, in recognition of their efforts and risks in assisting with the prosecution of the Action and in exchange for executing a General Release.

12.     "Court" means the United States District Court for the Middle District of Tennessee.

13.     "Defendants" means Jeff Ruby Culinary Entertainment, Inc., The Precinct, Inc., Carlo & Johnny's, Ltd., Jeff Ruby Steakhouse, LLC, Jeff Ruby's Columbus, LLC, Jeff Ruby's Steakhouse Lexington, LLC, Jeff Ruby's Louisville, LLC, and Jeff Ruby's Nashville, LLC.

14. "Defense Counsel" or "Counsel for Defendants" shall mean Frost Brown Todd, LLP.

15. "Effective Date" means the latest of the following dates: (i) thirty-one (31) days after the Court grants final approval of the Settlement, so long as neither party nor any objector files an appeal or motion for reconsideration of the Court's final approval order; or (ii) if a timely appeal is initiated by a party or an objector, the date of the final resolution of that appeal (including any requests for rehearing and/or petitions for *certiorari*, and the expiration of time to file such requests) resulting in a final judicial approval of the Settlement, provided that if any appeal results in a material modification to the Settlement terms, Defendants have the right to void this Agreement.

16. "FLSA Opt-In Plaintiffs" means the 127 individuals, including the Named Plaintiffs, who opted in to the Action by filing written consent to join forms (and who are listed in Exhibit C along with their Individual Settlement Amounts).

17. "Gross Settlement Fund" means $1,550,000.00, which sum includes the Individual Settlement Amount (including all required withholdings from Individual Settlement Amount), Class Counsel's Fee, the Class Representative Service Awards, Settlement Administration Costs, employee employment taxes and contributions, and interest. In addition to the $1,550,000.00 Gross Settlement Fund, Defendants shall be responsible for paying any lawfully required employer share of payroll taxes associated with the Individual Settlement Amount. No other amounts shall be required to be paid by Defendants under any circumstance, and this amount represents the absolute maximum liability of Defendants regardless of any future claims or circumstances, and any unclaimed amounts from the Gross Settlement Fund shall revert to Defendants without any conditions or restrictions on use and without creating any rights or claims by any other party.

18.     "Individual Settlement Amount" means the total amount payable from the Net Settlement Amount to each FLSA Opt-In Plaintiff and Class Member who submits a timely claim form and who does not submit a written request for exclusion (*i.e.*, each Settlement Claimant) to resolve all claims asserted in the Action.

19.     "Net Settlement Amount" means the Gross Settlement Fund, less Class Counsel's Fee, the Class Representative Service Awards, and Settlement Administration Costs.

20.     "Notice of Settlement" and "Settlement Notice" means the Notice of Class Action Settlement substantially in the form attached hereto as Exhibit A.

21.     "Notice Packet" means the Notice of Settlement, Claim Form, and self-addressed, stamped envelope for return to the Settlement Administrator.

22.     "Parties" means Plaintiffs and Defendants, collectively, and "Party" shall mean either Plaintiffs or Defendants, individually.

23.     "Named Plaintiffs" means Johnathan Lamb and Jim Belmont.

24.     "Released Claims" means: For Settlement Claimants all claims against the Released Parties for unpaid wages that have been alleged or that could have been alleged in the Action and Ohio Action, including all of the following claims for relief: (a) that Defendants failed to pay and/or properly calculate all wages due, straight time, overtime, double-time, premium pay, minimum wages, tip outs, retention of tips, and all other forms of wages; (b) that Defendants failed to maintain required records; (c) that Defendants owe other monies, liquidated damages or penalties under the FLSA and any state wage and hour laws (including without limitation the state wage laws identified in Plaintiffs' Complaint and Amended Complaints); and (d) that Defendants are responsible for the payment of damages, penalties, liquidated damages, attorneys' fees, interest, and other amounts recoverable under said causes of action, including, without limitation,

the following claims based on or reasonably relating to claims asserted or alleged in the Action or Ohio Action claims for unpaid wages (including claims for regular wages, overtime, regular rate calculations, tips and retention of tips) under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, et seq., state wage and hour laws, and state common law theories. The Released Claims also include all claims that Settlement Claimants may have against the Released Parties relating to (i) the payment and allocation of attorneys' fees and costs to Class Counsel pursuant to this Agreement, and (ii) the payment of the Class Representative Service Awards pursuant to this Agreement. For Class Members who are not Settlement Claimants, the Released Claims include all of the above Released Claims except for those under the FLSA, which they do not release because they have not consented in writing to join this action. The period of the Release shall extend commensurate with that of the Class Period, as defined above, and shall constitute a complete, irrevocable and unconditional release and covenant not to sue on all Released Claims through the date the Named Plaintiffs and Defendants fully execute this Agreement. The Released Claims shall be interpreted as broadly as possible under applicable law.

25. "Released Parties" (which shall be interpreted as broadly as possible under applicable law) means Defendants, and their affiliates and related entities, including, without limitation, their parents and subsidiaries, owners (including, but not limited to, Brian Jeffrey Ruby, Britney Ruby Miller, Brandon Ruby, Dillon Ruby and any member of the Ruby family), predecessors, successors, divisions, joint ventures and assigns, clients, and each of their past, present and/or future direct and/or indirect directors, officers, board members, employees, managers, partners, members, investors, principals, agents, insurers, co-insurers, re-insurers, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors,

successors, assigns, attorneys, and personal or legal representatives and any other person or entity claiming by or through any of the foregoing persons or entities.

26. "Response Deadline" means the date 60 days after the Settlement Administrator mails Settlement Notices to Class Members and is the last date on which Class Members may submit a Claim Form, provide a written request for exclusion from the settlement and/or objection to the Settlement. The exclusion and the objection process will be explained to the Class Members in the Notice consistent with Paragraph 43 (e) and (f). Any submissions postmarked or received after this deadline shall be deemed untimely and automatically rejected without further review or appeal rights, except that Class Counsel and Defendants' Counsel may confer in good faith to reach agreement on including any Class Members who submit late Claim Forms for what they believe is good cause.

27. "Settlement" means the disposition of the Action with prejudice, pursuant to this Agreement.

28. "Settlement Administration Costs" means the amount to be paid to the Settlement Administrator (estimated to be $16,225.32) from the Gross Settlement Fund for administration of this Settlement.

29. "Settlement Administrator" means ILYM Group, Inc.

30. "Settlement Claimants" means FLSA Opt-In Plaintiffs and Class Members who filed timely Claim Forms.

**RECITALS**

31. <u>Class Certification</u>. The Parties stipulate and agree to class certification of the Rule 23 claims in this Action for purposes of this Settlement only. Should the Settlement not become final and effective as herein provided, class certification shall immediately be revoked without

prejudice and the Settlement Class immediately decertified (subject to further proceedings on motion of any party to certify or deny certification thereafter). The Parties' willingness to stipulate to class certification as part of the Settlement shall have no bearing on, and shall not be admissible in or considered in connection with, the issue of whether a class should be certified in a non-settlement context in this Action or any other proceeding, and shall not constitute an admission of any wrongdoing or liability by Defendants, and shall have no bearing on, and shall not be admissible or considered in connection with, the issue of whether a class should be certified in any other lawsuit.

32. <u>Procedural History</u>. Plaintiff Johnathan Lamb filed the Ohio Action on February 27, 2024, in the United States District Court for the Southern District of Ohio, asserting claims under the Fair Labor Standards Act (FLSA), state law wage and hour claims under Kentucky, Ohio, and Tennessee law, and Rule 23 wage and hour claims under Kentucky law. On May 6, 2024, Defendants filed a Motion to Dismiss Plaintiff's claim based on failure to provide a proper tip credit notice. Plaintiff Lamb voluntarily dismissed that claim and filed his First Amended Complaint. On September 12, 2024, Plaintiffs amended their Complaint a second time, adding Named Plaintiff Jim Belmont and adding Rule 23 wage and hour claims under Ohio law and dropping claims alleging that Defendants violated the FLSA and state law by failing to provide proper tip credit notice.

33. On December 26, 2025, after extensive pre-conditional certification discovery, the Parties filed a Joint Motion for Court Approval of FLSA Notice in the Ohio Action whereby the Parties stipulated, for conditional certification notice purposes only, that all tip credit employees (e.g. Servers, Cocktail Servers, Bartenders and Server Assistants) at Jeff Ruby's Lexington, Jeff Ruby's Louisville, Jeff Ruby's Nashville and Carlo and Johnny restaurants were similarly situated

and they should be sent Notice of their right to opt-in to the lawsuit. On January 2, 2025, the Court granted the Parties' Joint Motion for Court Approval of FLSA Notice in the Ohio Action.

34. Following the FLSA notice period, 127 individuals opted in to the Ohio Action by filing written consent to join forms.

35. Subsequent to the close of the FLSA notice period the Parties engaged in numerous mediation conferences with nationally recognized wage and hour mediator Michael Russell to discuss a potential resolution. At the conclusion of such conferences the Parties ultimately reached a settlement of the entirety of the claims asserted in the Ohio Action.

36. As part of the settlement structure, the Parties agreed to seek a dismissal without prejudice of the claims asserted in the Ohio Action. Plaintiffs have filed a Complaint in the U.S. District Court for the Middle District of Tennessee, which asserts the same claims as asserted in the Ohio Action. A copy of the Complaint is attached hereto as Exhibit D. The Parties stipulated to the tolling of all claims asserted in the Ohio Action on the dates that all such claims were filed in the Ohio Action.

37. <u>Benefits of Settlement to Class Members</u>. Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to litigate their claims through trial and through any possible appeals. Plaintiffs have also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Plaintiffs and Class Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Action, both generally and in response to Defendants' defenses thereto, and the difficulties in establishing damages for the Class Members. Plaintiffs and Class Counsel have also taken into account the extensive settlement negotiations conducted. Based on the foregoing, Plaintiffs and Class Counsel have determined that the Settlement set forth in this

Agreement is a fair, adequate, and reasonable settlement, and is in the best interests of the Class Members.

38.  <u>Defendants' Reasons for Settlement</u>. Defendants have concluded that any further defense of this litigation would be protracted and expensive for all Parties. Substantial amounts of time and resources of Defendants have been and, unless this Settlement is made, will continue to be devoted to the defense of the claims asserted by Plaintiffs on behalf of FLSA Opt-In Plaintiffs and Class Members. Defendants have also taken into account the risks of further litigation in reaching its decision to enter into this Settlement. Although Defendants expressly deny all allegations of wrongdoing or liability whatsoever, maintain they have complied with all applicable laws at all times, and continue to contend that Defendants are not liable for any of the claims set forth by Plaintiffs, FLSA Opt-In Plaintiffs, and Class Members, Defendants have, solely to avoid the burden and expense of continued litigation, agreed to settle in the manner and upon the terms set forth in this Agreement to put to rest the claims as set forth in the Action and Ohio Action. Defendants have claimed and continue to claim that the Released Claims have no merit and do not give rise to liability. This Agreement is a compromise of disputed claims. Nothing contained in this Agreement and no documents referred to herein and no action taken to carry out this Agreement may be construed or used as an admission by or against Defendants as to the merits or lack thereof of the claims asserted.

## TERMS OF THE AGREEMENT

39.  <u>Release As To All FLSA Opt-In Plaintiffs and Class Members</u>. As of the Effective Date, in exchange for the Gross Settlement Fund, FLSA Opt-In Plaintiffs and Class Members release the Released Parties from their Released Claims for the Class Period, as described herein. Plaintiffs, FLSA Opt-In Plaintiffs, and Class Members may hereafter discover facts or legal arguments in addition to or different from those they now know or currently believe to be true with

-10-

respect to the claims and causes of action in this Action and that are the subject matter of the Released Claims. Regardless, the discovery of new facts or legal arguments shall in no way limit the scope or definition of the Released Claims, and by virtue of this Agreement, Plaintiffs, FLSA Opt-In Plaintiffs, and Class Members shall be deemed to have, and by operation of the final judgment approved by the Court, shall have, fully, finally, and forever settled and released all of the Released Claims as defined above. Class Members who do not timely submit a Claim Form or who do not cash their settlement checks within the 180-day period will still be deemed to have fully and irrevocably released the Released Parties from the Released Claims for the Class Period.

40. <u>General Release (As to Named Plaintiffs Only)</u>. In exchange for the consideration set forth in this Agreement (including Class Representative Service Awards), which is acknowledged to be sufficient consideration in all respects, Named Plaintiffs, for themselves and their heirs, successors assigns, representatives, agents, and anyone claiming through them, do hereby irrevocably and unconditionally waive, release, acquit, and forever discharge the Released Parties, from any and all claims, actions, charges, complaints, grievances and causes of action, of whatever nature, whether known or unknown, that exist or may exist on Named Plaintiffs' behalf as of the date of this Agreement, including but not limited to any and all claims based on: common law, tort, contract, equity, unjust enrichment, unpaid wages, statute, personal injury, emotional distress, invasion of privacy, defamation, fraud, *quantum meruit*, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance, including, but not limited to claims for violation of the Fair Labor Standards Act, other state wage and hour laws, the Americans with Disabilities Act of 1990, the Age Discrimination in Employment Act of 1967, the Employee Retirement Income Security Act of 1974, Title VII of the Civil Rights Act of 1964, the Family and Medical Leave Act of 1993, all of the state wage laws identified in

Plaintiffs' Second Amended Complaint, and any and all claims arising under any federal, state, or other governmental statute, law, regulation, or ordinance.

Named Plaintiffs may hereafter discover claims or facts in addition to, or different from, those which they now know or believe to exist, but expressly agree to fully, finally, and forever settle and release any and all claims against the Released Parties, known or unknown, suspected or unsuspected, that exist or may exist at the time of executing of this Agreement, including, but not limited to, any and all claims relating to or arising from Plaintiffs' employment with Defendants. Named Plaintiffs Lamb and Belmont agree not to apply for employment or re-employment with any of Defendants' restaurants at any time and that if Named Plaintiffs do apply, the Defendants shall reject the application. Named Plaintiffs Lamb and Belmont agree not to write or revise any reviews regarding Defendants' restaurants or make any public statements, comments or communications of any kind (for example, but not limited to on social media platforms, review websites, or to the media) about Defendants' restaurants or this settlement. The Parties further acknowledge, understand, and agree that this representation and commitment is essential to the Agreement, that this Agreement would not have been entered into were it not for this representation and commitment, that damages from breach are not readily ascertainable and as a result, if either of the Named Plaintiffs violate this term of the Agreement the violating Named Plaintiff agrees to pay the Defendants $5,000 in liquidated damages for each violation, plus the Defendants' reasonable attorneys' fees and costs.

41. <u>Tax Liability</u>. The Parties and their counsel make no representations as to the tax treatment or legal effect of the payments called for hereunder, and Plaintiffs, FLSA Opt-In Plaintiffs, and Class Members are not relying on any statement or representation by the Parties or their counsel in this regard. Except for the payment of the employer's share of taxes, Plaintiffs,

-12-

FLSA Opt-In Plaintiffs, and Class Members understand and agree that they will be responsible for the payment of any taxes and penalties assessed on the payments described herein and will hold the Parties and their counsel free and harmless from and against any claims, liabilities, costs and expenses, including attorneys' fees, resulting in any way from personal tax treatment of the payments made pursuant to this Agreement, including the treatment of certain of such payments as not subject to withholding or deduction for payroll and employment taxes.

42. <u>Circular 230 Disclaimer</u>. Each Party to this Agreement (for purposes of this section, the "acknowledging party" and each Party to this Agreement other than the acknowledging party, an "other party") acknowledges and agrees that: (1) no provision of this Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department Circular 230 (31 CFR part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her, or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Agreement and expressly acknowledges that Defendants and their representatives have made no representations or warranties regarding tax consequences and shall have no liability whatsoever for any tax consequences arising from this Agreement, (b) has not entered into this Agreement based upon the recommendation of any other party or any attorney or advisor to any other party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party; and (3) no attorney or adviser to any other party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax

-13-

treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

43.  <u>Settlement Administration</u>. No more than 14 calendar days after the Court grants preliminary approval of this Agreement, Defendants shall provide the Settlement Administrator and Class Counsel with the Class Information for purposes of mailing Notice Packets to Class Members.

   a.  <u>Notice By First Class U.S. Mail Email, and Short Message Service (SMS) Text</u>. Upon receipt of the Class Information, the Settlement Administrator will perform a search based on the National Change of Address Database to update and correct any known or identifiable address changes. No more than 14 calendar days after receiving the Class Information from Defendants as provided herein, the Settlement Administrator shall send copies of the Notice Packet to all Class Members by regular First Class U.S. Mail, email, and SMS Text Message. The Settlement Administrator shall exercise its best judgment to determine the current mailing address for each Class Member. The address identified by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Class Member.

   b.  <u>Undeliverable Notices</u>. Any Notice Packets returned to the Settlement Administrator as non-delivered shall be re-mailed to the forwarding address affixed thereto. If no forwarding address is provided, the Settlement Administrator will make reasonable efforts to obtain an updated mailing address within five business days of the date of the return of the Settlement Notices. If an updated mailing address is identified, the Settlement Administrator will resend the Settlement Notices to the Class Member. Class Members to whom Settlement Notices are resent after having been returned undeliverable to the Settlement Administrator will have 14 calendar days thereafter or until the Response Deadline has expired, whichever is later, to mail,

-14-

fax, or email the Claim Form, request to be excluded from the settlement in writing, or object to the settlement in writing. In all events, all claim forms, requests for exclusion or objections must be received at least 14 days before the Final Approval Hearing. Settlement Notices that are resent will inform the recipient of this adjusted deadline. The date of the postmark on the Claim Form, request for exclusion from the settlement, or written objection to the settlement, either based on the date on the return envelope, the date of the fax stamp, or the date of the email transmission, will be the exclusive means used to determine whether a Class Member has timely returned his/her Claim Form, request for exclusion, or written objection on or before the adjusted deadline. A Claim Form, written request for exclusion from the settlement, or written objection will be deemed valid only if it is signed by the Class Member and postmarked, faxed, or email stamped on or before the adjusted deadline.

c. <u>Notice Packets</u>. The Notice Packets, substantially in the form attached as Exhibit A, shall include the estimated Individual Settlement Amounts for each Class Member.

d. <u>Claims Model</u>. Class Members who wish to receive their payment as part of this Agreement shall complete and return the Claims Form indicating they want to receive their settlement payment within the Response Deadline. The Claim Form will not be valid if it is not timely submitted, if it is not signed by the Class Member, or if it does not contain the name and address of the Class Member. The date of the postmark on the return mailing envelope, fax stamp, or date of the email transmission on the Claim Form shall be the exclusive means used to determine whether the Claim Form was timely submitted. Named Plaintiffs and FLSA Opt-In Plaintiffs are not required to submit a Claim Form to participate in the Settlement. Their Consent Forms filed in the Ohio Action is sufficient to participate in the Settlement. Together, Named Plaintiffs, FLSA Opt-In Plaintiffs, and Class Members who timely submit a Claim Form are Settlement Claimants,

-15-

as defined above. For any Class Members who do not submit a valid Claim Form within the Response Deadline, their initially allocated settlement payment will be reduced from the Gross Settlement Payment and returned to Defendants. No such payment will be redistributed or reallocated to the other Class Members, Class Counsel, Named Plaintiffs, or FLSA Opt-In Plaintiffs. The failure to submit a valid Claim Form shall not affect the binding nature of release on such Class Members, and such Class Members shall be deemed to have released the Released Claims. No later than 10 calendar days after the Response Deadline (or 10 days after every late response is received as described in paragraph 43(b)), the Settlement Administrator shall provide Defense Counsel and Class Counsel with a final list of the Class Members who did not timely submit a Claim Form and the amounts of the Individual Settlement Amounts initially allocated to those class members, which will be reduced from the Gross Settlement Fund payment to be made by Defendants after the Court's Final Approval Order.

e. <u>Exclusions</u>. Class Members who wish to exclude themselves from the Settlement must submit a written request for to exclude themselves from the Settlement to the Settlement Administrator by the Response Deadline. The request for exclusion will not be valid if it is not timely submitted, if it is not in writing, if it is not signed by the Class Member making the request, or if it does not contain the name and address of the Class Member making the request. The date of the postmark on the return mailing envelope, fax stamp, or date of the email transmission on the envelope including the request for exclusion shall be the exclusive means used to determine whether the request for exclusion was timely submitted. Any Class Member who requests to be excluded from the Settlement Class will not be entitled to any recovery under the Settlement and will not be bound by the terms of the Settlement or have any right to object, appeal or comment thereon. Class Members who fail to submit a valid and timely request for exclusion

in writing on or before the Response Deadline shall be bound by all terms of the Settlement and any final judgment entered in this Action if the Settlement is approved by the Court. No later than 10 calendar days after the Response Deadline, the Settlement Administrator shall provide Defense Counsel and Class Counsel with a list of the Class Members who have timely submitted written requests for exclusions.  To the extent written requests for exclusions are submitted after the response deadline as described in paragraph 43(b), Settlement Administrator shall provide Defense Counsel and Class Counsel with those requests for exclusion as soon as possible, and no later than three calendar days of receipt. Class Counsel will provide the names of the individuals who submitted written requests for exclusion along with their motion for final approval and request that such names be noted on the Court's order or judgment. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to submit a written request for exclusion from the Settlement. Class Counsel shall not represent any Class Members with respect to any efforts to exclude themselves from the Settlement.

        f.    <u>Objections</u>. The Notice Packet shall state that Class Members who wish to object to the Settlement must mail to the Settlement Administrator a written statement of objection ("Notice of Objection") by the Response Deadline. No extensions of time for the submission of objections will be given for any reason. The postmark date shall be deemed the exclusive means for determining whether a Notice of Objection was filed and served timely. The Notice of Objection must be signed by the Class Member and state: (1) the full name of the Class Member; (2) the last four digits of the Class Member's Social Security number and/or the Employee ID number; (3) the case number of the Action; and (4) the basis for the objection with any supporting documents and evidence. Class Members who fail to make objections in the manner specified above shall be bound by the release of the Released Claims, deemed to have waived any objections,

and shall be foreclosed from making any objections (whether by appeal or otherwise) to the Settlement. Class Members who timely object will have a right to appear at the Final Approval Hearing in order to have their objections heard by the Court and the Parties will have the right to cross-examine any objector and present rebuttal evidence. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to file or serve written objections to the Settlement or appeal from the Order and Final Judgment. Class Counsel shall not represent any Class Members with respect to any such objections. The Settlement Administrator shall e-mail any objections to counsel for the Parties promptly upon receipt, and Class Counsel shall file any objections with the Court along with their motion for final approval of the Settlement.

44.    <u>Funding and Allocation of Gross Settlement Fund</u>. Defendants will fund the Gross Settlement fund by way of two installments of 50% of the Gross Settlement Fund (minus any amount allocated, as described herein, to Class Members who did not timely and effectively submit valid Claim Forms). The first installment will be made within fourteen (14) calendar days after the Effective Date. Defendants shall provide the second half of the Gross Settlement Fund, minus any amount allocated, as described herein, to Class Members who did not timely and effectively submit valid Claim Forms, twelve (12) months after the Effective Date or by November 15, 2026 (whichever date is earlier). However, under no circumstances shall Defendants be required to fund the second installment earlier than ninety (90) days after the Effective Date.  If November 15, 2026, is less than ninety (90) days from the Effective Date, then the second installment shall be due within ninety (90) days from the Effective Date.  Defendants shall have the option in their sole discretion to provide the Gross Settlement Fund, or any portion thereof, to the Settlement Administrator at an earlier time or at earlier times without any pre-payment penalty or waiver of

any rights or defenses under this Agreement. Any pre-payment by Defendants of the Gross Settlement Fund is purely voluntary and does not constitute a breach of this Agreement.

        a.    <u>Individual Settlement Amounts</u>. Individual Settlement Amounts for Plaintiffs, FLSA Opt-In Plaintiffs, and Class Members who timely submit Claim Forms (*i.e.*, Settlement Claimants) will be paid from the Net Settlement Amount in the amounts set forth in <u>Exhibits B and C</u>. Individual Settlement Amounts for Plaintiffs and FLSA Opt-In Plaintiffs will be mailed by First Class U.S. Mail to Named Plaintiffs and FLSA Opt-In Plaintiffs at the addresses provided to the Settlement Administrator by Class Counsel within 14 calendar days after the Settlement Administrator receives each installment payment. Individual Settlement Amounts for Class Members who timely submitted effective Claim Forms will be mailed by regular First Class U.S. Mail to Class Members at the addresses provided by the Class Members on their Claim Form within 14 calendar days after the Settlement Administrator receives each installment payment. Individual Settlement Amounts will be allocated as follows: for Plaintiff Belmont, Ohio FLSA Opt-In Plaintiffs, and Ohio Class Members, 33% as wages; 67% as liquidated damages; for Plaintiff Lamb, Kentucky FLSA Opt-In Plaintiffs, and Kentucky Class Members 50% as wages and 50% as liquidated damages; and for Tennessee FLSA Opt-In Plaintiffs 50% as wages and 50% as liquidated damages. The Settlement Administrator will be responsible for issuing a form W-2 for the amount deemed wages and an IRS Form 1099 for the portions allocated to liquidated damages. Any checks issued under this Agreement will remain valid and negotiable for one hundred and eighty (180) days from the date of their issuance. After that time, any such uncashed check proceeds will be returned to Defendants and the releasing Plaintiff, FLSA Opt-In Plaintiff, or Class Member shall remain bound by all terms of this Settlement Agreement, including all releases herein.

b. <u>Class Representative Service Awards</u>. Defendants agree not to oppose or object to any application or motion by Plaintiffs for the following Class Representative Service Awards for their time and effort in bringing and prosecuting this matter and agree that these payments are made in exchange and as consideration for the Released Claims and a General Release:

Jonathan Lamb                $10,000

Jim Belmont                  $10,000

One half of the Class Representative Service Awards ($5,000) shall be paid to each Named Plaintiff from the Gross Settlement Fund no later than 14 calendar days after each installment payment is received by the Settlement Administrator from Defendants. Any portion of the requested Class Representative Service Awards that is not awarded to the Named Plaintiffs shall be part of the Net Settlement Amount and shall be distributed to Class Members on a *pro rata* basis. The Settlement Administrator shall issue an IRS Form 1099-MISC to Plaintiffs for their Class Representative Service Awards. Plaintiffs shall be solely and legally responsible to pay any and all applicable taxes on their Class Representative Service Awards and shall hold Defendants harmless from any claim or liability for taxes, penalties, or interest arising as a result of the Class Representative Service Awards. The Class Representative Service Awards shall be in addition to Plaintiffs' Individual Settlement Amounts as FLSA Opt-In Plaintiffs. In the event that the Court reduces or does not approve the requested Class Representative Service Awards, Plaintiffs shall not have the right to revoke or renegotiate the Settlement, or file an appeal, and it will remain binding; provided, however, that if the Court does not approve any Service Award payment whatsoever, then the provisions set forth in Paragraph 40 shall be without effect.

c.    <u>Class Counsel's Fee</u>. By way of motion Class Counsel shall seek attorneys' fees not to exceed One-Third (33.33%) of the Gross Settlement Fund ($516,666.67), plus reimbursement of actual litigation expenses incurred by Class Counsel in prosecuting the Action as may be supported by a declaration from Class Counsel. In the event that the Court reduces or does not approve the requested Class Counsel's Fee, Class Counsel shall not have the right to revoke this Agreement, and it will remain binding. Any portion of the requested Class Counsel's Fee that is not awarded to Class Counsel shall be part of the Net Settlement Amount and shall be distributed to Class Members as provided in this Agreement. Class Counsel's Fee shall be paid to Class Counsel in two installments from the Gross Settlement Fund no later than 14 calendar days after each installment of the Settlement is funded by Defendants. The Settlement Administrator will issue to Barrett Johnston Martin & Garrison, PLLC, a Form 1099 with respect to the awarded Class Counsel's Fee. Class Counsel shall be solely and legally responsible for paying all applicable taxes on the payments made pursuant to this paragraph.

d.    <u>Settlement Administration Costs</u>. The Settlement Administrator shall be paid for the reasonable and documented costs of administration of the Settlement from the Gross Settlement Fund, subject to the Parties review and approval of all invoices and expenses. The estimate of such costs of administration for the disbursement of the Gross Settlement Fund shall not exceed $16,225.32.  No fewer than 21 calendar days prior to the Final Approval Hearing, the Settlement Administrator shall provide the Parties with a statement detailing the costs of administration of this Settlement. The Settlement Administrator shall be paid half of the Settlement Administration Costs 14 calendar days after Defendants fund the first half of the Gross Settlement Fund, and the Settlement Administrator shall be paid half of the Settlement Costs 14 calendar days after Defendants fund the second half of the Gross Settlement Fund.

e.     The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the cost and expenses incurred in administration of the Settlement. The Parties each represent they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.

f.     The Settlement Administrator shall be responsible for: processing and mailing payments to Named Plaintiffs (confirmation of payment mailed to Named Plaintiffs shall be communicated to Class Counsel by the Settlement Administrator), Class Counsel, FLSA Opt-In Plaintiffs, and Class Members who submitted valid Claims Forms; printing and mailing the Settlement Notices to the Class Members as directed by the Court; receiving, validating and reporting the Claims Forms and written requests for exclusion submitted by Class Members; deducting taxes from Individual Settlement Payments and distributing tax forms; processing and mailing tax payments to the appropriate state and federal taxing authorities; providing declaration(s) as necessary in support of preliminary and/or final approval of this Settlement; providing regular detailed reports of all expenses and activities to the Parties; and other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform. The Settlement Administrator shall keep the Parties timely apprised of the performance of all Settlement Administrator responsibilities. No later than 10 calendar days after the Response Deadline, the Settlement Administrator shall provide counsel for the Parties with a final accounting of the Gross Settlement Fund, minus the amount initially allocated to Class Members who did not submit valid Claims Forms, and report the amount of all payments to be made to each participating Settlement Class Member who submitted valid Claims Forms.

-22-

g.      No person shall have any claim against Released Parties, Plaintiffs, FLSA Opt-In Plaintiffs, Class Members, Class Counsel, Defense Counsel, or the Settlement Administrator based on distributions and payments made in accordance with this Agreement. This release extends to any and all claims, whether known or unknown, arising from or related to the distribution and administration of the settlement proceeds.

45.     Option to Terminate Settlement. If, after the Response Deadline and before the Final Approval Hearing, the number of Class Members who submitted timely and valid Requests for Exclusion from the Settlement is ten percent (10%) or more of all Class Members, Defendants shall have the right, in their sole discretion, to revoke this Settlement and stipulation to class certification. If Defendants exercise their option to terminate this Settlement, Defendants shall: (a) provide written notice to Class Counsel within 14 calendar days after all written requests for exclusion are received and submitted by the Administrator to Defendants; and (b) pay Settlement Administration Costs actually incurred up to the date of termination. If Defendants exercise their right to terminate the Settlement under this Paragraph, the Parties thereafter shall proceed in all respects as if this Agreement had not been executed and the parties will return to their respective positions prior to the entry of this Settlement Agreement.

46.     Final Settlement Approval Hearing and Entry of Final Judgment. Upon expiration of the Response Deadline, with the Court's permission, a Final Approval Hearing shall be conducted to determine final approval of the Settlement along with the amount properly payable for (i) Class Counsel's Fee, (ii) the Class Representative Service Awards, (iii) Individual Settlement Payments to Class Members, and (iv) the Settlement Administration Costs. After granting final approval, the Court shall retain jurisdiction over the Parties to enforce the terms of the judgment.

47.     Nullification of Settlement Agreement. In the event: (i) the Court does not grant preliminary approval; (ii) the Court does not grant final approval; (iii) the Court does not enter a final judgment as provided herein; or (iv) the Settlement does not become final for any other reason, this Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void from the beginning. In such a case, the Parties and any funds to be awarded under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed, except that any costs already incurred by the Settlement Administrator shall be paid by equal apportionment among the Parties. In the event an appeal is filed from the Court's final judgment, or any other appellate review is sought, payment of the Gross Settlement Fund and administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review, but any fees incurred by the Settlement Administrator prior to its being notified of the filing of an appeal from the Court's Final Judgment, or any other appellate review, shall be paid to the Settlement Administrator within thirty (30) days of such notification by the appealing party.

48.     No Effect on Employee Benefits. Amounts paid to Named Plaintiffs, FLSA Opt-In Plaintiffs, or other Class Members pursuant to this Agreement shall be deemed not to be pensionable earnings and shall not have any effect on the eligibility for, or calculation of, any past, present, or future employee benefits including but not limited to vacations, holiday pay, retirement plans, bonuses or other compensation, of the Named Plaintiffs, FLSA Opt-In Plaintiffs, or Class Members.

49.     No Admission by the Parties. Defendants deny any and all claims alleged in this Action, the Ohio Action and deny all wrongdoing whatsoever. Neither this Agreement nor any of

-24-

its terms, nor any of the negotiations connected with it, shall be construed as an admission or concession by Defendants of any liability or wrongdoing whatsoever. Neither this Agreement nor any of its terms, nor any payment made hereunder, shall be offered or received as evidence of or construed as, and Defendants expressly maintain their denials of all allegations an admission or indication with respect to any claim of any fault, liability, wrongdoing, or omission by Defendants in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

50. <u>Motions for Approval of FLSA Settlement and for Preliminary Approval of Rule 23 Class and Motion for Final Approval of Rule 23 Class Settlement</u>. The Parties and their counsel will cooperate with one another and use their best efforts to effect the Court's approval of the Motions for Approval of FLSA Settlement and for Preliminary Approval of Rule 23 Class Settlement and Final Approval of Rule 23 Class Settlement. Plaintiffs' Motion for Approval of FLSA Settlement shall be filed along with their Motion for Preliminary Approval of their Rule 23 Class Settlement. The Parties' resolution of Plaintiffs' FLSA claims is contingent on Court approval, and on the Court's final approval of the resolution of Plaintiffs' Rule 23 class claims. Similarly, the Parties resolution of the Rule 23 class claims is contingent on Court approval of the Plaintiffs' FLSA claims. In their Unopposed Motion for Preliminary Approval, Plaintiffs shall request the setting of a Final Approval hearing so that details of such hearing may be included in the Notice.

51. <u>No Knowledge of Other Claims</u>. (1) Named Plaintiffs acknowledge, represent, warrant and covenant, that they have no current intention of asserting any other wage claims against Defendants in any judicial or administrative forum; and (2) Class Counsel acknowledge,

represent, and warrant they do not represent any persons who have expressed any interest in pursuing any litigation or seeking any recovery against Defendants, other than through this Action.

52.    <u>Exhibits and Headings</u>. The terms of this Agreement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein. Any Exhibit to this Agreement is an integral part of the Settlement. The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

53.    <u>Interim Stay of Proceedings</u>. The Parties agree to seek to stay all proceedings in this Action, except such proceedings necessary to implement and complete the Settlement, in abeyance pending the Final Approval Hearing to be conducted by the Court.

54.    <u>Dismissal of the Action</u>. Plaintiff and Class Counsel agree to seek dismissal of and use their best efforts to obtain dismissal of the Ohio Action without prejudice and this Action with prejudice after the Final Approval is ordered by the Court.

55.    <u>Amendment or Modification</u>. This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

56.    <u>Entire Agreement</u>. This Agreement and any attached Exhibits constitute the entire Agreement among these Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in the Agreement and its Exhibits.

57.    <u>Cooperation</u>. The Parties agree to cooperate fully and in good faith with one another to accomplish and implement the terms of this Settlement, and shall take no actions that could reasonably be interpreted as frustrating or impeding the implementation of this Agreement. Such

cooperation shall include, but not be limited to, execution of such other documents and the taking of such other action as may be reasonably necessary to fulfill the terms of this Settlement. The Parties to this Settlement shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by Court order, or otherwise, to effectuate this Settlement and the terms set forth herein.

58. <u>Authorization to Enter Into Settlement Agreement</u>. Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate actions required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. The person signing this Agreement on behalf of the Defendants represents and warrants that he or she is authorized to sign this Agreement on Defendants' behalf. Plaintiffs represent and warrant that they are authorized to sign this Agreement and that they have not assigned and will not assign any claim, or part of a claim, covered by this Settlement to any, whether now or in the future, to a third-party.

59. <u>Execution by Class Members</u>. The Parties agree that it is impossible or impracticable to have each Class Member execute this Settlement Agreement. The Notice will advise all Class Members of the binding nature of the release and such will have the same force and effect as if each Class Member personally executed this Agreement. Any Class Member who does not opt out shall be deemed to have knowingly and voluntarily waived any right to challenge the binding nature of this release.

60. <u>Binding on Successors and Assigns</u>. This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties hereto, as previously defined.

-27-

61. <u>Governing Law</u>. All terms of this Agreement and the Exhibits hereto and any disputes arising hereunder shall be governed by and interpreted according to the laws of the State of Tennessee, without giving effect to any choice of law or conflict of law provision or rule that would cause the application of the laws of any other jurisdiction. The parties agree that any action to enforce or interpret this Agreement shall be brought exclusively in the state or federal courts located in Tennessee. Each party hereby waives any right to trial by jury in any action arising out of or relating to this Agreement.

62. <u>Construction of Agreement</u>. The Parties agree that the terms and conditions of this Joint Stipulation of Settlement are the result of lengthy, intensive, arms-length negotiations between the Parties and that this Stipulation will not be construed in favor of or against any of the Parties by reason of their participation in drafting of this Stipulation.

63. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts. Counterpart signatures may be delivered via email (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, e.g., www.docusign.com) or other transmission method and any counterpart so delivered will be deemed to have been duly signed and deemed to be original signatures for all purposes hereunder. All executed counterparts and each of them shall be deemed to be one and the same instrument, provided that counsel for the Parties to this Agreement shall exchange among themselves copies or originals of the signed counterparts.

64. <u>This Settlement Is Fair, Adequate and Reasonable</u>. The Parties agree that this Settlement represents a compromise of disputed claims, and nothing contained herein shall be construed as an admission of liability or wrongdoing by Defendants, which expressly deny any liability or wrongdoing. The Parties have arrived at this Settlement after extensive arms-length

-28-

negotiations, taking into account all relevant factors, present and potential. In light of the foregoing, the Parties agree that this settlement represents a fair, adequate, and reasonable resolution of the claims asserted in the Action and released herein.

65.　Jurisdiction of the Court. The Parties agree that the Court shall retain jurisdiction solely with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, provided that any disputes shall first be submitted to mandatory confidential mediation before Mediator Michael Russell, who assisted with this settlement, with the costs of such mediation to be borne equally by the parties, and the Parties hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.　The requirement that any disputes hereunder shall first be submitted to Michael Russell for mediation does not apply to any dispute relating to the failure of Defendants to comply with deadlines for funding the Gross Settlement Fund.

66.　Invalidity of Any Provision. Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.　In the event any provision of this Agreement shall be found unenforceable, the unenforceable provision shall be deemed deleted and replaced with a valid provision that most closely approximates the intent of the parties, and the validity and enforceability of the remaining provisions shall not be affected thereby, unless such deleted provision is material to the Agreement's purpose or causes a failure of consideration, in which case the entire Agreement shall be voidable at Defendants' option.

67. <u>Publicity</u>. Class Counsel, Defense Counsel, Defendants, and Named Plaintiffs agree not to issue a press release, make any public statement, or engage in any form of publication (including, but not limited to social media posts, interviews, or communications with media) disclosing the existence, terms, or amount of this Settlement other than through Court filings. Nothing in this Paragraph shall limit Defendants, Class Counsel or Defense Counsel from communicating about this Settlement internally within their respective organizations. Any breach of this provision shall constitute a material breach of this Agreement.

68. <u>Waiver of Certain Appeals</u>. The Parties agree to waive appeals and to stipulate to class certification for purposes of this settlement only, and this stipulation shall not be construed as an admission by Defendants regarding the appropriateness of class certification, the merits of any claims, or any wrongdoing in any context or proceeding. The Parties further agree that if the settlement is not approved or is terminated for any reason, this stipulation and all negotiations, proceedings, and documents prepared, and statements made in connection herewith, shall be without prejudice to any Party and shall not be deemed or construed to be an admission or confession by any Party of any fact, matter, or proposition of law, and shall not be used in any manner for any purpose, and all Parties shall stand in the same position as if this Agreement had not been negotiated, made, or filed with the Court.

69. <u>CAFA Notice</u>. Defendants shall provide the CAFA Notices for the proposed settlement to the state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than ten (10) calendar days after Class Counsel files a motion for preliminary approval of this Settlement Agreement.

**NAMED PLAINTIFFS**

Dated: 10/31/2025

JONATHAN LAMB

Dated: 11/03/2025

JIM BELMONT

**BARRETT JOHNSTON MARTIN & GARRISON PLLC**

Dated: 11/03/2025

DAVID W. GARRISON
*Class Counsel*

**BARKAN MEIZLISH DEROSE COX, LLP**

Dated: 11/03/2025

ROBERT E. DEROSE
*Class Counsel*

**DEFENDANTS**

Dated:

For Defendants

By:

-31-

**NAMED PLAINTIFFS**

Dated: _____

_____
JONATHAN LAMB

Dated: _____

_____
JIM BELMONT

**BARRETT JOHNSTON MARTIN &
GARRISON PLLC**

Dated:_____

_____
DAVID W. GARRISON
*Class Counsel*

**BARKAN MEIZLISH DEROSE COX, LLP**

Dated:_____

_____
ROBERT E. DEROSE
*Class Counsel*

**DEFENDANTS**

Dated: 11/03/2025

_____
For Defendants

By: Darcic Bristw, PRESIDENT 4 CFO

-31-

Dated: 11/3/2025

**FROST BROWN TODD, LLP**

NEAL SHAH

*Counsel for Defendants*

0134251.0790574   4910-4883-6982v1

Pursuant to Paragraph 55 of this Joint Stipulation of Class Action Settlement ("Settlement Agreement"), the Parties agree that the Settlement Agreement should be modified by replacing the original Exhibit B to the Settlement Agreement with REVISED EXHIBIT B. Exhibit B to the Settlement Agreement incorrectly included the names of individuals who are not covered by Plaintiffs' Rule 23 class action claims brought under Ohio and Kentucky state law, including individuals employed by Defendants at their Nashville, Tennessee restaurant locations but who did not work at any of Defendants' restaurant locations in Ohio or Kentucky during the time periods covered by the Settlement Agreement.

The Settlement Agreement with Exhibit B was submitted to the Court for approval on November 17, 2025, along with an unopposed motion for approval filed by Plaintiffs. (Doc. No. 41). Per Plaintiffs' request, on December 2, 2025, the Court issued an Order terminating Plaintiffs' unopposed motion for approval. (Doc. No. 44).

The Parties agree that all references to Exhibit B in the Settlement Agreement refer to REVISED EXHIBIT B. The Parties further agree that Plaintiffs should submit the Settlement Agreement with REVISED EXHIBIT B to the Court for approval. REVISED EXHIBIT B correctly identifies all putative class members who are covered by Plaintiffs' Rule 23 Ohio and Kentucky class action claims.

In accordance with Paragraph 55 of the Settlement Agreement, counsel for the Parties have indicated the Parties' agreement to this modified Settlement Agreement with their signatures below.

Dated: 12/15/25

DAVID W. GARRISON
**BARRETT JOHNSTON MARTIN & GARRISON, LLP**

*Counsel for Plaintiffs*

Dated: 12/16/25

NEAL SHAH
**FROST BROWN TODD, LLP**

*Counsel for Defendants*

0134251.0790574 4897-6929-5745v1

# EXHIBIT A

---

**TIME-SENSITIVE, COURT-AUTHORIZED NOTICE**
**\* \* \* This is not an advertisement from a lawyer. \* \* \***

---

**This Notice explains your legal rights regarding the Settlement.**
**Your rights may be affected even if you do nothing.**

| 1. | What is this about? |
|---|---|

A class and collective action settlement has been preliminarily approved by the U.S. District Court for the Middle District of Tennessee in a Class and Collective Action lawsuit against Jeff Ruby's Culinary Entertainment, Inc., The Precinct, Inc., Carlo & Johnny's, LTD., Jeff Ruby Steakhouse, LLC, Jeff Ruby's Columbus, LLC, Jeff Ruby's Steakhouse Lexington, LLC, Jeff Ruby's Louisville, LLC, and Jeff Ruby's Nashville, LLC ("Jeff Ruby's") for alleged unpaid wages, under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as well as state wage laws of Kentucky and Ohio (the "Settlement"). The lawsuit and Settlement involve employees who worked for Jeff Ruby's as tipped employees (including servers, bartenders, and others), who were allegedly paid an amount less than the minimum hourly wage plus customer tips under the "tip credit" provisions of federal and state law. The FLSA claims are brought on behalf of tipped employees of Jeff Ruby's who worked at any of its restaurants in Tennessee, Kentucky, and Ohio during the applicable time period. The state wage law class action claims are limited to employees who worked in Kentucky and/or Ohio during the applicable time period. The Court overseeing the lawsuit has ordered this notice to be sent to employees who are members of the Kentucky state law and Ohio state law classes preliminarily approved by the Court. This includes you.

The lawsuit was filed by two employees of Jeff Ruby's who serve as the "Class Representatives" or "Named Plaintiffs." The case is *Jonathan Lamb and Jim Belmont, On Behalf of Themselves and All Others Similarly Situated v. Jeff Ruby's Culinary Entertainment, Inc.*, Case No. 3:25-cv-00949, in the United States District Court for the Middle District of Tennessee. The Class Representatives believe that they and other tipped employees were not paid in compliance with the federal law known as the Fair Labor Standards Act ("FLSA"), and applicable state laws in Kentucky and Ohio. The lawsuit alleges that Jeff Ruby's failed to pay tipped employees the full minimum wage for certain time spent performing non-tipped duties. The lawsuit also alleges that Jeff Ruby's did not comply with state law regarding certain alleged tip pooling arrangements. Jeff Ruby's denies all of the allegations in the case, denies any violation of the law, and asserts that all employees were paid at least the appropriate wage for all time worked, had appropriate tip pool arrangements and were paid in compliance with both federal and state law.  Jeff Ruby's denies violating the law in any respect and seeks to resolve the matter without continued litigation.

The Court has not determined who is right or wrong in the suit. For example, the Court has not determined that Jeff Ruby's is liable or did anything wrong. Instead, the Class Representatives and Jeff Ruby's reached a settlement to resolve the case, which would pay a negotiated sum of money to all tipped employees who worked for Jeff Ruby's during the affected time period.

**Your estimated share of the gross settlement is $_____. More details about this amount and how to exercise your rights in the Settlement are provided below.**

**The deadline to submit this form is <mark>DATE</mark>. Forms submitted after this date WILL NOT be valid.**

## 2.      Why am I getting this notice?

You have been identified from Jeff Ruby's records as a tipped employee who worked for Jeff Ruby's during the Class Period covered by this case and who is eligible to recover a share of the Settlement. The relevant Class Periods are:

> **For Class Members employed in Ohio – from September 12, 2021, to [the date the parties fully execute the settlement agreement].**

> **For Class Members employed in Kentucky – from February 27, 2019, to [the date the parties fully execute the settlement agreement].**

## 3.      What is the settlement

Under the terms of the Settlement, Jeff Ruby's will pay a total of $1,550,000.00 (the "Gross Settlement Amount") into a settlement fund to resolve this lawsuit, as well as the employer share of taxes owed for wage payments made in accordance with the settlement. The settlement fund will be used to pay a settlement to FLSA Collective and Class Members for claims for wages and associated money damages. In exchange, FLSA Collective and Class Members will give up wage and hour claims against Jeff Ruby's through [the date the parties fully execute the settlement agreement]. The settlement fund will also pay Court-approved attorneys' fees, costs, and expenses, as well as separate service payments for the Class Representatives in the amount of $10,000 each. This settlement represents a compromise of disputed claims and is not an admission of liability or wrongdoing by Jeff Ruby's.

So far, only preliminary approval of the Settlement has been granted by the Court, and the Settlement must still be given final approval by the Court another, final time, following the Final Approval hearing set for [INSERT DATE AND TIME]. If final approval is granted, the proposed settlement will resolve the lawsuit. No payments will be made until after the Settlement becomes final.

## 4.      Why is there a settlement?

The Settlement is a compromise of the claims made in the lawsuit. Settlements avoid the costs and risks of motions, trial, and related appeals, while providing benefits to the Class and FLSA Collective Members when the Settlement becomes final and resolution of litigation and certainty for both sides. The Court has not decided in favor of Jeff Ruby's employees (the Plaintiffs) or Jeff Ruby's (the Defendant). The Class Representatives and the attorneys for the Class and FLSA Collective Members believe the Settlement is in the best interests of the Class and FLSA Collective Members.

## 5.      Why is this a class and collective action?

In a class or collective action, one or more people file a lawsuit to assert legal claims on behalf of themselves and other persons who have experienced the same or similar circumstances. Here, Johnathan Lamb and Jim Belmont began this lawsuit and will serve as the "Class Representatives" to represent not only their personal interests, but also the interests of all the FLSA Collective and Class members. Because this is a class and collective action, even persons who did not file their own lawsuit can receive a settlement recovery for the alleged wage violations asserted against Jeff Ruby's.

## 6.      What is the difference between the FLSA Collective Acton and the Class Actions?

**The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.**

The lawsuit involves two groups of employees: (1) the "FLSA Collective," which is a "Collective" under federal law, Section 16(b) of the FLSA, 29 U.S.C. § 216(b), which consists of all tipped employees employed by Jeff Ruby's from February 21, 2021 to July 11, 2025, who have either already consented in writing to join this action or who file a claim form as part of this settlement; and (2) multiple "Classes" under Federal Rule of Civil Procedure 23 for employees in Kentucky and Ohio who meet the class definitions set forth in this Notice.

There are two Classes under Federal Rule of Civil Procedure 23: (1) a Class that consists of all tipped employees employed by Jeff Ruby's in their Kentucky restaurants at any time from February 27, 2019 to July 11, 2025; and (2) a Class that consists of all tipped employees employed by Jeff Ruby's in their Ohio restaurants at any time from September 12, 2021 to July 11, 2025.

The Named Plaintiffs have asserted the claims described in Section 1 above under the FLSA, on behalf of themselves and the FLSA Collective. The Named Plaintiffs have asserted the claims described in Section 1 above under the state laws of Kentucky and Ohio, on behalf of themselves and the two Classes, whose members worked in each of those states.

Federal Rule of Civil Procedure 23 allows workers in the above-referenced states to pursue their claims, and this Settlement, under a "Class" format in a single case, without filing their own lawsuit. The FLSA allows employees to assert their claims, and participate in this Settlement, in a single, FLSA collective action, without filing their own lawsuit. However, under the Settlement, no group of Jeff Ruby's employees will be given preferential treatment.

| 7. | What are my options? |
|---|---|

| | | |
|---|---|---|
| **COMPLETE THE CLAIM FORM** | If you choose to be included in the Settlement, you must complete the attached Consent to Join Settlement of Wage Claim Lawsuit Against Jeff Ruby's and Release of Claims form ("Claim Form") and return it to the Settlement Administrator by the due date. After the period to join the settlement ends and the Court gives final approval, you will receive a settlement check for your share. **Your estimated gross settlement share is $_____.** | Deadline: «Date» |
| **DO NOTHING** | You are not required to do anything. If you do nothing, you will not receive a settlement check for your share. If you are an FLSA Collective member but not a member of one of the state law Classes, then you will only be bound by the FLSA release. If you are a member of one of the state law Classes, then you will be bound by the Settlement, including the release. | Deadline: «Date» |
| **OBJECT TO THE SETTLEMENT** | Any Class Member may object to the Settlement, except for those who choose to exclude themselves. To object, you must do so by writing to the Settlement Administrator and stating why you don't think the Settlement should be approved, as explained in section 14 below. If you wish to present your objection at the fairness hearing, you must state your intention to do so in your written objection. | Deadline: «Date» |

**The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.**

| | | |
|---|---|---|
| **EXCLUDE YOURSELF FROM THIS SETTLEMENT** | If you are a Class Member, you may exclude yourself from the Settlement by informing the Settlement Administrator in writing that you want to "opt-out" of the Settlement. If you "opt-out," you will not recover any money from the Settlement, and you will not be bound by the Settlement. If you "opt-out," you may not object to the Settlement. If the Settlement becomes final, this is the only option that allows you to keep your rights to sue Jeff Ruby's for claims related to your wages, including any claims under any applicable state law. | Deadline: «Date» |

## 8. What is my share of the Settlement?

Your estimated share of the gross settlement is $_____. For members of the Kentucky class, half of this amount will be paid to you as wages with appropriate employment withholdings, and the other half will be paid as a flat amount of liquidated damages with no withholdings. For members of the Ohio class, 33% of this amount will be paid to you as wages with appropriate employment withholdings, and the remaining 67% will be paid as a flat amount of liquidated damages with no withholdings. These divisions are consistent with the applicable state law.

Your settlement payment is based on your hours worked with Jeff Ruby's as a tipped employees in a tip-credit position (in other words, a position in which you were paid less than the federal or state minimum wage plus customer tips) from the beginning of the applicable statute of limitations through July 11, 2025.

For the period of time Class Members worked as servers for Jeff Ruby's, they are receiving approximately 25% of their total tip credit wage recovery for all hours worked. For the period of time Class Members worked as bartenders or as another type of tipped employee (such as a barback or server assistant), they are receiving approximately 30 minutes of tip credit wage recovery for each shift worked. These recoveries are before attorneys' fee, costs, and expenses are deducted.

## 9. Can I be retaliated against for participating in the Settlement?

No. It is a violation of federal and state law for Jeff Ruby's or anyone else to retaliate against you in any way for taking part in this case.

## 10. Do I have a lawyer in the case?

Yes. The Court has appointed the following lead attorneys as "Class Counsel":

**The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.**

David W. Garrison
Joshua A. Frank
Nicole A. Chanin
Barrett Johnson Martin & Garrison PLLC
200 31st Avenue North
Nashville, TN 37203
phone 615 244 2202
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com
nchanin@barrettjohnston.com

Robert E. DeRose
Anna R. Caplan
Barkan Meizlish DeRose Cox, LLP
4200 Regent Street, Ste. 210
Columbus, OH 43219
phone 614-221-4221
bderose@barkanmeizlish.com
acaplan@barkanmeizlish.com

## 11. How will Class Counsel be paid? Will the Class Representative be paid any additional amounts?

Class Counsel will make an application to the Court to be paid from the Gross Settlement Amount, which must be approved by the Court. Class Counsel will apply for an attorneys' fee award of no more than one-third (1/3) of the Gross Settlement Amount (or $516,150.00), plus their costs and expenses.

Class Counsel will also ask the Court to approve a service award and general release payment of up to $10,000 to compensate each of the Class Representatives in exchange for work performed on behalf of the Collective and Class and for a complete release of all of their potential claims against Jeff Ruby's.

The Court will decide the attorneys' fees, costs, and expenses, and service award and general release payment to be awarded.

## 12. What if my contact information changes?

If your mailing address, email, or phone number changes, it is your responsibility to notify the Settlement Administrator and provide updated contact information.

## 13. What am I giving up to stay in the settlement class?

If you are a Kentucky or Ohio Class Member and submit a Claim Form by [DATE], then when the Settlement becomes final, you will receive a Settlement payment.

If you are a Class Member, unless you exclude yourself, you will remain a Class Member. That means when the Settlement becomes final, you will release all claims that you have against Jeff Ruby's for unpaid wages, interest, liquidated damages, or other penalties for unpaid wages, and related record keeping violations under the state law in which you worked, including Kentucky law, which includes the Kentucky Wages and Hours Act ("KWHA"), KRS 337.010, *et seq.*; and Ohio law, including the Ohio Minimum Fair Wage Standards Act ("The Ohio Wage Act"), Ohio Rev. Code. §§ 4111, et seq*., including those claims that you may not be fully aware of. This means that if you do nothing, you are still releasing your claims against Jeff Ruby's under these states' laws. If you submit a Claim Form timely, you will release both your state law claims and your FLSA claims, and you will receive a settlement payment.

## 14. How do I tell the Court if don't like the Settlement?

If you are a Class Member and do not exclude yourself, you may object to the Settlement.

The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.
Case 3:25-cv-00949    Document 45-1    Filed 12/16/25    Page 41 of 102 PageID #: 365
Page 5 of 8

Filing an objection means asking the Court to deny approval of the entire Settlement. You can't ask the Court to order a different settlement—it can only approve or reject the proposed Settlement. If the Court denies approval of the Settlement, no Settlement payments will be paid, all the FLSA Collective and Class members will not receive any money from the Settlement, and the lawsuit will continue.

Any objection must be in writing and should contain the following:

a. The name and case number of this lawsuit (*Jonathan Lamb and Jim Belmont, et al., v. Jeff Ruby's Culinary Entertainment, Inc., et al.*, Case No. 3:25-cv-00949);

b. Your full name, mailing address, email address, and telephone number;

c. All reasons for your objection and whether it is specific to you or applies to any other employees;

d. A statement identifying the class action settlements you have previously objected to, if any;

e. Whether you intend to personally appear or testify at the Final Approval Hearing;

f. The name and contact information of any attorneys representing, advising, or assisting you, including any counsel who may be entitled to compensation for any reason related to your objection or comment;

g. Whether any attorney will appear on your behalf at the Final Approval Hearing, and if so the identity of that attorney;

h. The identity of any persons who you wish to call to testify at the Final Approval Hearing; and

i. Your handwritten or electronically imaged written (e.g., "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient.

To be considered by the Court, your objection must be submitted by mail or email to the Settlement Administrator, «Name and Address». Any objection must be filed or postmarked on or before «Date».

| 15. | What is the difference between objecting and excluding myself? |
|---|---|

You object to the Settlement when, as a Class Member, you disagree with some aspect of the Settlement and want to request that the Court should not give Final Approval to the Settlement. An objection allows your views to be heard in court. Any Class Member who does not exclude themselves can object to the Settlement.

Excluding yourself as a Class Member means that you are no longer a Class Member and don't want the Settlement to apply to you. Once you are excluded, you lose any right to receive any payment from the Settlement or to object to any aspect of the Settlement because the case no longer affects you. Only Class Members can exclude themselves from the Class Action Settlement.

| 16. | When and where will the Court decide whether to approve the Settlement? |
|---|---|

The Court will hold the Final Approval Hearing at «Time and Date» before Judge Holmes, at the Fred D. Thompson U.S. Courthouse and Federal Building, 719 Church Street, Nashville, TN 37203.

At the Final Approval Hearing, the Court will decide whether to approve the Settlement. It will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court may listen to people who appear at the hearing and who have provided notice of their intent to appear at the hearing. The Court may also consider Class Counsel's application for attorneys' fees, costs, and expenses, and the Class Representatives' general release payments.

**The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.**

## 17. Do I have to go to the hearing?

No. Class Counsel will answer any questions the Court may have. If you submit a written objection, you do not have to come to Court to talk about it. As long as you submitted your written objection on time, the Court will consider it. You may attend at your own expense if you wish. You may also pay your own lawyer to attend, but it is not required.

## 18. How do I exclude myself from the Settlement?

Class Members who do not want to take part in the Settlement and want to keep the right to sue Jeff Ruby's based on claims resolved by the Settlement, to the extent such claims are timely, must take steps to exclude yourself from the Class (sometimes called "opting out").

To exclude yourself from the Settlement, you must send an Exclusion Letter by mail or email saying that you wish to do so. Your Exclusion Letter must state:

a.  The name and case number of this lawsuit (*Jonathan Lamb and Jim Belmont, et al., v. Jeff Ruby's Culinary Entertainment, Inc., et al.*, Case No. 3:25-cv-00949);

b.  Your full name, mailing address, email address, and telephone number;

c.  The words "Notification of Exclusion," or other statement that you want to be excluded from the Settlement; and

d.  Your handwritten or electronically imaged written (e.g., "DocuSign") signature. An attorney's signature, or a typed signature, is not sufficient. Your Exclusion Letter must be signed by you, personally, and not your lawyer or anyone else acting on your behalf. "Mass" or "class" opt-outs made on behalf of multiple persons or classes of persons will be deemed invalid.

You cannot exclude yourself by telephone or email. You must mail or email your Exclusion Letter to the Settlement Administrator, «Name and Address», postmarked no later than «Date». You cannot exclude yourself by submitting a notification to any other person or place. You cannot exclude yourself after the deadline of «Date».

If you a Class Member who submits a Claim Form and you also submit an Exclusion Letter, the Exclusion Letter will be deemed invalid.

## 19. If I do not exclude myself, can I sue Jeff Ruby's for the same thing later?

No. If you are a Class Member, unless you exclude yourself, you give up the right to sue Jeff Ruby's for the claims that this Settlement resolves. If you are an FLSA Collective Member and you submit a Claim Form, you give up the right to sue Jeff Ruby's for the claims that this Settlement resolves.

## 20. If I exclude myself, can I still get money from the Settlement?

No. You will not be eligible to receive any money from the Settlement if you exclude yourself.

## 21. If I exclude myself, am I still represented by Class Counsel?

No. Class Counsel represents all Class Members. If you exclude yourself as a Class Member, you are not represented by Class Counsel.

**The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.**

## 22.    How do I get more information?

This notice summarizes the proposed Settlement. More details are in the settlement agreement itself. You can get a copy of the settlement agreement, view other case documents, and get additional information and updates by contacting Class Counsel, who are listed in the answer to Question #10.

All the case documents that have been filed publicly in this case are also available online through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.tnmd.uscourts.gov. This case is called *Jonathan Lamb and Jim Belmont, et al., v. Jeff Ruby's Culinary Entertainment, Inc., et al.*, Case No. 3:25-cv-00949. You may also obtain case documents by visiting the office of the Clerk of the Court for the United States District Court for the Middle District of Tennessee, Nashville Division, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

You can also get additional information or request a copy of the Settlement Agreement by contacting the Settlement Administrator:

**Jeff Ruby's Wage Lawsuit**
«NAME»
«street»
«city, state, zip»
phone «phone»

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE
TO INQUIRE ABOUT THE SETTLEMENT OR THE NOTICE PROCESS.**

**The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.**

**CLAIM FORM AND RELEASE FOR SETTLEMENT OF WAGE CLAIMS AGAINST JEFF RUBY'S**

Printed Name: _____

1. I have read the notice regarding the settlement of the lawsuit with Jeff Ruby's. I understand that the lawsuit was brought under the Fair Labor Standards Act (FLSA) and applicable federal and state law. I understand the case was settled without any admission of liability by Jeff Ruby's, and the settlement was approved by the Court.

2. I consent to join the settlement to recover damages for allegedly unpaid wages and related damages against Jeff Ruby's. I understand I will receive an amount based on my proportional share of the net settlement that will be paid to the employees that join the settlement. I understand that, in exchange for this payment, all wage claims against Jeff Ruby's regarding unpaid wages I may have as a tipped employee for Jeff Ruby's will be fully and finally settled. I understand that by submitting this Claim Form, I am releasing all wage-and-hour claims that I may have against Jeff Ruby's under the FLSA and applicable federal and state law for the time periods described in the Notice.

3. I consent to be bound by the Court's decisions.

4. I designate the Class Representatives as my agents to make decisions on my behalf regarding the lawsuit, including entering into settlement agreements, agreements with counsel, and all other matters related to the lawsuit. I understand and agree that my attorneys, the representative plaintiff, or the Court may in the future appoint other individuals to be the representative plaintiff. I consent to the appointment and agree to be bound by the decisions made by the representative plaintiff regarding this matter.

_____          _____
Signature                                                                  Date

**By signing, you designate** BARRETT JOHNSTON MARTIN & GARRISON PLLC, **and** BARKAN MEIZLISH DEROSE COX, LLP **as your attorneys for your wage claims. The information below will not be filed on any public court filing.**

_____
Email Address

_____
Cell Phone Number

_____
Address

_____
City / State / Zip

| |
|---|
| **TO JOIN, RETURN THIS FORM BY MAIL OR EMAIL:** |
| **Wage Lawsuit Against Jeff Ruby's** |
| **ADMINISTRATOR** |
| **Administrator's Address** |
| **Administrator's Phone / Fax** |
| **Administrator's Email** |
| |
| **OR COMPLETE ONLINE:** |
| **«hyperlink»** |

**The deadline to submit this form is DATE. Forms submitted after this date WILL NOT be valid.**

**QUESTIONS? You can contact the attorneys for the group of Jeff Ruby's employees:**

David W. Garrison
Joshua A. Frank
Nicole A. Chanin
BARRETT JOHNSON MARTIN & GARRISON PLLC
200 31st Avenue North
Nashville, TN 37203
phone  615 244 2202
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com
nchanin@barrettjohnston.com

Robert E. DeRose
Anna R. Caplan
BARKAN MEIZLISH DEROSE COX, LLP
4200 Regent Street, Ste. 210
Columbus, OH 43219
phone  614-221-4221
bderose@barkanmeizlish.com
acaplan@barkanmeizlish.com

# REVISED

# EXHIBIT B

**REVISED EXHIBIT B**

| | NAME | AMOUNT |
|---|---|---|
| 1 | Aaron Cox | $ 307.84 |
| 2 | Aaron Grant Young | $ 358.13 |
| 3 | Aaron Rheinfrank | $ 54.25 |
| 4 | Abby Landis | $ 378.81 |
| 5 | Abby Miller | $ 194.09 |
| 6 | Abby Robertson | $ 86.15 |
| 7 | Abdallah Achbani | $ 215.82 |
| 8 | Abigail Brown | $ 166.63 |
| 9 | Abigale Obrien | $ 30.59 |
| 10 | Abram Sweetser | $ 911.84 |
| 11 | Adam Brown | $ 1,993.54 |
| 12 | Adam Foltz | $ 263.89 |
| 13 | Adam Hoy | $ 144.95 |
| 14 | Adam Ransdell | $ 90.11 |
| 15 | Adam Salti | $ 417.43 |
| 16 | Aden Smith | $ 465.88 |
| 17 | Adrian Rattenbury | $ 2,262.06 |
| 18 | Adrian Tobin | $ 122.18 |
| 19 | Adrienne Link | $ 1,255.57 |
| 20 | Alec Houston | $ 1,429.68 |
| 21 | Alejandra Schoonmaker | $ 51.00 |
| 22 | Alex E. Eling | $ 1,480.64 |
| 23 | Alex Hartman | $ 191.14 |
| 24 | Alex Socha | $ 1,902.47 |
| 25 | Alex V. Vick | $ 1,948.93 |
| 26 | Alex Webb | $ 129.25 |
| 27 | Alexander Beckham | $ 56.18 |
| 28 | Alexander Grdina | $ 152.03 |
| 29 | Alexander Kole | $ 59.89 |
| 30 | Alexander Wittenbrook | $ 175.42 |
| 31 | Alexandra Hagenbarth | $ 42.41 |
| 32 | Alexandra Johnston | $ 502.35 |
| 33 | Alexandra Smith | $ 54.42 |
| 34 | Alexia McKenzie | $ 193.69 |
| 35 | Alexis Moore | $ 680.58 |
| 36 | Alexis Penningten | $ 849.77 |
| 37 | Alexis Winebrenner | $ 906.54 |
| 38 | Alexus Warren | $ 109.42 |
| 39 | Alfred Perry | $ 109.48 |
| 40 | Ali Saleh | $ 121.66 |
| 41 | Alicia Baker | $ 1,116.24 |
| 42 | Allison Brown | $ 2,144.49 |
| 43 | Allison Longnecker | $ 59.64 |
| 44 | Alysia Snyder | $ 542.26 |

| | | | |
|---|---|---|---|
| 45 | Alyssa Singleton | $ | 35.74 |
| 46 | Amanda Ellington | $ | 5,124.65 |
| 47 | Amanda Weiss | $ | 1,613.10 |
| 48 | Amber Figueroa | $ | 144.02 |
| 49 | Amdrew Lash | $ | 63.42 |
| 50 | Amiah Mesina | $ | 625.62 |
| 51 | Amy Maggard | $ | 87.41 |
| 52 | Ana Hand | $ | 230.33 |
| 53 | Andre Jones | $ | 503.40 |
| 54 | Andrei Galvez | $ | 1,105.70 |
| 55 | Andres Cardenas | $ | 63.56 |
| 56 | Andrew Benson | $ | 1,979.51 |
| 57 | Andrew Fehr | $ | 114.75 |
| 58 | Andrew Freeman | $ | 569.99 |
| 59 | Andrew Judson | $ | 189.97 |
| 60 | Andrew Moore | $ | 58.77 |
| 61 | Andrew Seales | $ | 510.39 |
| 62 | Andrew Sharp | $ | 52.32 |
| 63 | Andrew Zoeller | $ | 320.75 |
| 64 | Angelica McIntyre | $ | 557.20 |
| 65 | Angelo Scarlato | $ | 1,571.66 |
| 66 | Anna Lowe | $ | 78.96 |
| 67 | Anna Wabnitz | $ | 1,383.75 |
| 68 | Anna Wotawa | $ | 71.72 |
| 69 | Annie Ruedger | $ | 466.02 |
| 70 | Anthony Delianides | $ | 1,762.44 |
| 71 | Anthony Fyffe | $ | 102.83 |
| 72 | Anthony G. Gonzalez | $ | 1,477.43 |
| 73 | Anthony Guevara | $ | 31.41 |
| 74 | Anthony Hale | $ | 103.99 |
| 75 | Anthony K. Kleine | $ | 1,995.74 |
| 76 | Anthony Scott | $ | 1,741.31 |
| 77 | Armando Coronado-Salvador | $ | 637.34 |
| 78 | Aron Kroger | $ | 64.12 |
| 79 | Ashleigh Hatton | $ | 786.67 |
| 80 | Ashley Newton | $ | 643.45 |
| 81 | Ashley Thomas | $ | 46.49 |
| 82 | Audrey Becker | $ | 311.87 |
| 83 | August Howlett | $ | 280.57 |
| 84 | Aumad Edwards | $ | 105.00 |
| 85 | Aundrea Rister | $ | 69.49 |
| 86 | Austin Payton | $ | 308.59 |
| 87 | Austina Davis | $ | 124.98 |
| 88 | Ava Helms | $ | 42.99 |
| 89 | Ava Myers | $ | 57.94 |
| 90 | Avery Perrine | $ | 25.05 |
| 91 | Ayden Ellis | $ | 421.87 |

| | | | |
|---|---|---|---|
| 92 | Bailey Clanin | $ | 1,474.13 |
| 93 | Ben Bobst | $ | 26.52 |
| 94 | Benjamin Fisher | $ | 389.72 |
| 95 | Benjamin Foster | $ | 164.81 |
| 96 | Benjamin Wesolowski | $ | 140.94 |
| 97 | Blake Dykes | $ | 29.58 |
| 98 | Blake Pyles | $ | 79.05 |
| 99 | Blake Watson | $ | 383.19 |
| 100 | Braden Smyth | $ | 104.08 |
| 101 | Bradley Rossi | $ | 1,842.65 |
| 102 | Brandon Kelly | $ | 199.14 |
| 103 | Brandon Mullins | $ | 122.26 |
| 104 | Brandon Reinhart | $ | 580.90 |
| 105 | Brendan Horner | $ | 290.15 |
| 106 | Brendan Kelly | $ | 345.70 |
| 107 | Brendan Malone | $ | 257.73 |
| 108 | Brennen Rogers | $ | 468.17 |
| 109 | Brent LaPak | $ | 749.90 |
| 110 | Brenton Foust | $ | 614.39 |
| 111 | Brett Bauer | $ | 1,321.78 |
| 112 | Brett Thirion | $ | 37.69 |
| 113 | Brian Bruns | $ | 84.59 |
| 114 | Brian Hedden | $ | 390.54 |
| 115 | Brian Roman | $ | 201.26 |
| 116 | Brian Thieneman | $ | 62.77 |
| 117 | Brian Waddle | $ | 224.95 |
| 118 | Briana Basile | $ | 79.63 |
| 119 | Brittany Brown | $ | 519.97 |
| 120 | Brittany Kulisics | $ | 4,240.21 |
| 121 | Brittany Meeks | $ | 565.20 |
| 122 | Brittany Reas | $ | 33.39 |
| 123 | Brittnee Hoffman | $ | 3,793.54 |
| 124 | Brittney Uehlein | $ | 680.23 |
| 125 | Brooke Hart | $ | 26.40 |
| 126 | Brooke Vires | $ | 618.50 |
| 127 | Brooklyn Parker | $ | 38.19 |
| 128 | Bryan Edwards | $ | 38.53 |
| 129 | Bryan Fristoe | $ | 959.86 |
| 130 | Bryan Roblero | $ | 482.20 |
| 131 | Bryan Satori | $ | 3,407.08 |
| 132 | Brycen Haucke | $ | 40.62 |
| 133 | Byron Stark | $ | 36.93 |
| 134 | Caimon Marshall | $ | 230.90 |
| 135 | Caleb Duff | $ | 1,475.57 |
| 136 | Caleb King | $ | 71.79 |
| 137 | Caleb Winding | $ | 51.77 |
| 138 | Camden Miller | $ | 214.98 |

| | | | |
|---|---|---|---|
| 139 | Camdyn Randolph | $ | 37.86 |
| 140 | Cameron Brothers | $ | 54.98 |
| 141 | Cameron Calmeise | $ | 411.15 |
| 142 | Cameron Etris | $ | 1,906.59 |
| 143 | Cameron K. Kinney | $ | 1,504.21 |
| 144 | Cameron Najarian | $ | 1,111.04 |
| 145 | Cami Butcher | $ | 26.40 |
| 146 | Camille Greer | $ | 194.92 |
| 147 | Carmell Rigola | $ | 54.07 |
| 148 | Caroline Clark | $ | 51.38 |
| 149 | Caroline Epperson | $ | 615.07 |
| 150 | Carson Alexander | $ | 343.13 |
| 151 | Cassidy Justice | $ | 231.42 |
| 152 | Chad Beach | $ | 111.14 |
| 153 | Chad Ray | $ | 5,226.53 |
| 154 | Chandler Craine | $ | 2,050.88 |
| 155 | Chandler McCoy- Simandle | $ | 40.49 |
| 156 | Charles Coy | $ | 40.25 |
| 157 | Charles Lappin | $ | 691.40 |
| 158 | Charles Rose | $ | 848.02 |
| 159 | Chase Terry | $ | 75.65 |
| 160 | Chastity Howell | $ | 904.80 |
| 161 | Chelsea Chosta | $ | 703.69 |
| 162 | Cherran Gaunt | $ | 1,971.75 |
| 163 | Cheyanne Burroughs | $ | 71.16 |
| 164 | Chloe Riley | $ | 263.96 |
| 165 | Chloe Shirey | $ | 329.17 |
| 166 | Chris Fultz | $ | 194.02 |
| 167 | Chris Richter | $ | 499.84 |
| 168 | Christian Albright | $ | 338.64 |
| 169 | Christian DeBlasis | $ | 104.61 |
| 170 | Christian Hansen | $ | 176.20 |
| 171 | Christian Kelly | $ | 287.76 |
| 172 | Christian Sizemore | $ | 36.17 |
| 173 | Christian Willis | $ | 42.68 |
| 174 | Christopher Estes | $ | 2,207.53 |
| 175 | Christopher Jones | $ | 59.93 |
| 176 | Christopher Necamp | $ | 1,503.01 |
| 177 | Christopher Webster | $ | 223.35 |
| 178 | Clarisa Mejia Hernandez | $ | 346.97 |
| 179 | Clay Hastings | $ | 83.05 |
| 180 | Clayton Scharfenberger | $ | 40.16 |
| 181 | Clayton Schmohe | $ | 71.53 |
| 182 | Cody Coleman | $ | 270.76 |
| 183 | Cody Monk | $ | 1,782.49 |
| 184 | Cole Benson | $ | 173.65 |
| 185 | Cole Hannon | $ | 147.49 |

| 186 | Cole Vires | $ | 1,829.02 |
|---|---|---|---|
| 187 | Colin McQuarrie | $ | 166.51 |
| 188 | Colin Michaels | $ | 69.99 |
| 189 | Colin Soper | $ | 312.14 |
| 190 | Collen Ferrell | $ | 32.72 |
| 191 | Collin Bass | $ | 108.37 |
| 192 | Colton Miller | $ | 62.01 |
| 193 | Connor Brown | $ | 37.35 |
| 194 | Connor Flood | $ | 73.74 |
| 195 | Connor Hickey | $ | 182.17 |
| 196 | Connor Hinz | $ | 94.93 |
| 197 | Connor Runyan | $ | 134.74 |
| 198 | Corey Watson | $ | 1,902.50 |
| 199 | Cory Harmon | $ | 385.66 |
| 200 | Cory Huffman | $ | 2,414.11 |
| 201 | Courtney Ferguson | $ | 519.32 |
| 202 | Courtney Mauricio | $ | 68.57 |
| 203 | Courtney McFadden | $ | 35.79 |
| 204 | Cynthia Martinez-Gomez | $ | 167.48 |
| 205 | DJ Sanders | $ | 59.93 |
| 206 | Daisey Dailey | $ | 3,869.52 |
| 207 | Daisy Webb | $ | 483.24 |
| 208 | Dakota Blum | $ | 92.06 |
| 209 | Dakota Kumpf | $ | 212.83 |
| 210 | Dakota Mullannix | $ | 172.11 |
| 211 | Dalen Landrum | $ | 213.64 |
| 212 | Dallas Smith | $ | 2,355.25 |
| 213 | Dan Altom | $ | 484.29 |
| 214 | Daniel Arellano | $ | 339.03 |
| 215 | Daniel Boateng | $ | 32.91 |
| 216 | Daniel Hales | $ | 74.89 |
| 217 | Daniel Sheridan | $ | 7,216.77 |
| 218 | Daniel Van Dyke | $ | 54.73 |
| 219 | Danielle Blanc | $ | 736.13 |
| 220 | Darlene West | $ | 356.32 |
| 221 | Darrell Mudd | $ | 2,890.54 |
| 222 | David Carrington | $ | 92.60 |
| 223 | David Ellis | $ | 487.18 |
| 224 | David Ffiske | $ | 153.17 |
| 225 | David Gaunt | $ | 1,981.33 |
| 226 | David Greenwell | $ | 97.20 |
| 227 | David Poynter | $ | 1,867.25 |
| 228 | David Romans | $ | 1,446.84 |
| 229 | Davon Earle | $ | 150.33 |
| 230 | Dawson Dornick | $ | 31.14 |
| 231 | De'jia De Leon | $ | 626.64 |
| 232 | Dennis Pickett | $ | 277.92 |

| 233 | Devry Moore | $ | 524.52 |
|---|---|---|---|
| 234 | Dillon Thompson | $ | 74.08 |
| 235 | Dominic Dalessandro | $ | 686.02 |
| 236 | Don Matutina | $ | 2,596.45 |
| 237 | Donald Rose | $ | 634.53 |
| 238 | Donald Vossler | $ | 3,586.67 |
| 239 | Doug Welch | $ | 4,962.05 |
| 240 | Dustin D. Doremus | $ | 1,309.21 |
| 241 | Dustin G. Galinsky | $ | 1,444.87 |
| 242 | Dustin Weiss | $ | 475.02 |
| 243 | Dylan Crawford | $ | 311.04 |
| 244 | Dylan Sumpter | $ | 181.83 |
| 245 | Dylan Whitt | $ | 113.54 |
| 246 | Eddy Gil | $ | 44.95 |
| 247 | Edgar Adino-Melo | $ | 355.02 |
| 248 | Edward Donohoe | $ | 66.94 |
| 249 | Edwin Lopez | $ | 26.58 |
| 250 | Edwin Miller | $ | 151.01 |
| 251 | Eileen Dove | $ | 546.09 |
| 252 | Elijah Goggin | $ | 435.15 |
| 253 | Elijah Wojcik | $ | 80.16 |
| 254 | Elisabeth Gray | $ | 86.06 |
| 255 | Elise Fritts | $ | 365.47 |
| 256 | Elisha Hanavan | $ | 26.61 |
| 257 | Elizabeth Davis | $ | 331.34 |
| 258 | Ella Goldberger | $ | 697.69 |
| 259 | Ellie Sharp | $ | 78.31 |
| 260 | Ellie Steder | $ | 150.65 |
| 261 | Elliott Prichard | $ | 1,037.69 |
| 262 | Emily Dutton | $ | 53.00 |
| 263 | Emily Kuster | $ | 211.48 |
| 264 | Emily Patton | $ | 206.28 |
| 265 | Emily Ryan | $ | 105.41 |
| 266 | Emily Tekulve | $ | 29.38 |
| 267 | Eric Hartzell | $ | 1,535.54 |
| 268 | Eric Johnston | $ | 545.22 |
| 269 | Erick Frasher | $ | 1,816.84 |
| 270 | Erin Bauer | $ | 150.44 |
| 271 | Erin Gesell | $ | 805.12 |
| 272 | Erin Horine | $ | 63.03 |
| 273 | Erin Patton | $ | 1,518.73 |
| 274 | Erin Sims | $ | 854.68 |
| 275 | Ethan Brown | $ | 126.31 |
| 276 | Ethan Conger | $ | 116.02 |
| 277 | Ethan Jefferson | $ | 473.38 |
| 278 | Ethan Lloyd | $ | 703.36 |
| 279 | Ethan McCain | $ | 126.61 |

| | | | |
|---|---|---|---|
| 280 | Ethan Zoog | $ | 215.95 |
| 281 | Evan Belleman | $ | 540.48 |
| 282 | Evan Brondhaver | $ | 514.68 |
| 283 | Evan Smith | $ | 45.39 |
| 284 | Fahim Baig | $ | 38.76 |
| 285 | Fatou Gueye | $ | 139.05 |
| 286 | Frank Carroll | $ | 464.17 |
| 287 | Gabriel Johnston | $ | 195.86 |
| 288 | Gabriel Rubio | $ | 190.59 |
| 289 | Gabriel Verhelst | $ | 440.03 |
| 290 | Garrett Anderson | $ | 73.17 |
| 291 | Garrett Bunn | $ | 81.30 |
| 292 | Garrett Will | $ | 238.84 |
| 293 | Gary Eastlack | $ | 91.44 |
| 294 | Gary Kern | $ | 1,740.19 |
| 295 | Gary Melton | $ | 1,888.17 |
| 296 | Gavin Soper | $ | 500.98 |
| 297 | Genesis Talbot | $ | 38.19 |
| 298 | Genevieve Marsh | $ | 238.45 |
| 299 | George Barizza | $ | 59.89 |
| 300 | Gerrick Mack | $ | 3,507.78 |
| 301 | Graham Reverman | $ | 98.19 |
| 302 | Grant Fischer | $ | 495.92 |
| 303 | Grant Gentry | $ | 1,355.87 |
| 304 | Grant Hicks | $ | 45.81 |
| 305 | Grant Masden | $ | 201.53 |
| 306 | Grayson Arnold | $ | 156.31 |
| 307 | Gregory Lavender | $ | 1,708.97 |
| 308 | Gregory Rahill | $ | 3,495.07 |
| 309 | Guadalupe Lopez | $ | 391.06 |
| 310 | Haden Combs | $ | 172.62 |
| 311 | Haden Smith | $ | 67.45 |
| 312 | Haleigh Goderwis | $ | 37.28 |
| 313 | Haneefa Valentine | $ | 627.89 |
| 314 | Hanna Hughes | $ | 686.10 |
| 315 | Hannah Chenault | $ | 1,080.39 |
| 316 | Hannah Greenwell | $ | 2,647.10 |
| 317 | Harold Burdick | $ | 2,130.60 |
| 318 | Harrison Yocum | $ | 26.67 |
| 319 | Hayden Donaldson | $ | 268.81 |
| 320 | Hayden Irwin | $ | 102.58 |
| 321 | Hayley Abrams | $ | 985.15 |
| 322 | Heather Belluscio | $ | 531.39 |
| 323 | Hogan Daley | $ | 428.62 |
| 324 | Hunter Cappelmann | $ | 66.95 |
| 325 | Huyen Bui-Gauck | $ | 2,899.91 |
| 326 | Ian Williams | $ | 28.03 |

| | | | |
|---|---|---|---|
| 327 | Indiana Anders | $ | 32.67 |
| 328 | Isabella Fields | $ | 101.43 |
| 329 | Isabella Hamilton | $ | 271.54 |
| 330 | JMatt Nickels | $ | 238.13 |
| 331 | Jackson Rainey | $ | 55.53 |
| 332 | Jacob Fair | $ | 482.40 |
| 333 | Jacob Franklin | $ | 48.75 |
| 334 | Jacob Lehman | $ | 215.76 |
| 335 | Jacob O'Brien | $ | 67.03 |
| 336 | Jacob Pineault | $ | 714.70 |
| 337 | Jacob Spencer | $ | 154.30 |
| 338 | Jacob Spurlock | $ | 26.52 |
| 339 | Jacob Wilburn | $ | 1,006.62 |
| 340 | Jacqueline Gaines | $ | 247.86 |
| 341 | Jade Connolly | $ | 2,041.01 |
| 342 | Jadyn Kleinhenz | $ | 102.01 |
| 343 | Jake Herbstreit | $ | 44.56 |
| 344 | Jake Mamula | $ | 31.43 |
| 345 | Jalen Greiser | $ | 66.58 |
| 346 | James Krumdieck | $ | 2,439.16 |
| 347 | James Taylor | $ | 2,477.62 |
| 348 | Jamie Duffy | $ | 182.73 |
| 349 | Jamie Hunter | $ | 511.21 |
| 350 | January Miller | $ | 2,330.71 |
| 351 | Jared Boeckmann | $ | 1,217.22 |
| 352 | Jared Smith | $ | 360.26 |
| 353 | Jared Whitney | $ | 29.80 |
| 354 | Jason Parkey | $ | 800.26 |
| 355 | Jason Wellbaum | $ | 2,317.64 |
| 356 | Javier Velasquez | $ | 375.63 |
| 357 | Jay Cronley | $ | 492.74 |
| 358 | Jay Richey | $ | 119.68 |
| 359 | Jayden Bergantino | $ | 349.78 |
| 360 | Jaydon Sanders | $ | 231.94 |
| 361 | Jeanna Long | $ | 482.18 |
| 362 | Jeff Harrison | $ | 814.30 |
| 363 | Jen Osborne | $ | 181.52 |
| 364 | Jenna Eichmann | $ | 30.59 |
| 365 | Jenna Pallecone | $ | 380.82 |
| 366 | Jennifer Hosny | $ | 1,135.10 |
| 367 | Jennifer Prokhnevskiy | $ | 170.78 |
| 368 | Jeremy Creachbaum | $ | 1,892.05 |
| 369 | Jeremy Stenger | $ | 1,765.81 |
| 370 | Jesse Benson | $ | 330.56 |
| 371 | Jesse Greene | $ | 400.62 |
| 372 | Jessica Berra | $ | 987.10 |
| 373 | Jessica DesJardins | $ | 56.18 |

| | | | |
|---|---|---|---|
| 374 | Jesuska Inciarte | $ | 324.67 |
| 375 | Jimette Effinger | $ | 835.02 |
| 376 | Joe Liming | $ | 570.03 |
| 377 | Joe S. Stiens | $ | 2,179.70 |
| 378 | Joey H. Himmelstein | $ | 270.47 |
| 379 | Johander Adino | $ | 1,382.16 |
| 380 | John B. Clayton | $ | 5,145.75 |
| 381 | John Christian | $ | 1,194.72 |
| 382 | John Dehaven | $ | 88.95 |
| 383 | John Dunbar | $ | 1,708.62 |
| 384 | John Earley | $ | 772.86 |
| 385 | John Hrycak | $ | 257.90 |
| 386 | John M. Mueller | $ | 5,549.99 |
| 387 | John McGonagle | $ | 517.30 |
| 388 | John McGrath | $ | 280.66 |
| 389 | John O'Neal | $ | 164.11 |
| 390 | John Poulton | $ | 60.30 |
| 391 | John Rapp | $ | 1,846.00 |
| 392 | John Specker | $ | 88.14 |
| 393 | Johnny Ellington | $ | 4,953.67 |
| 394 | Jonathan Colvin | $ | 55.59 |
| 395 | Jonathan Crase | $ | 55.84 |
| 396 | Jonathan Hellmann | $ | 439.55 |
| 397 | Jonathan Hibdon | $ | 1,420.22 |
| 398 | Jonathan Schroeder | $ | 358.44 |
| 399 | Jonathan Starck | $ | 26.53 |
| 400 | Jonathan Wright | $ | 5,562.40 |
| 401 | Jordan B Bridgett | $ | 1,648.54 |
| 402 | Jordan F Fredrick | $ | 1,944.78 |
| 403 | Jordan Fenstemaker | $ | 1,967.84 |
| 404 | Jordan Jackson | $ | 165.99 |
| 405 | Jordan Van Kirk | $ | 575.46 |
| 406 | Jorge Jeronimo | $ | 2,117.09 |
| 407 | Joseph Gomez | $ | 65.23 |
| 408 | Joseph Lebryk | $ | 93.58 |
| 409 | Joseph Meyers | $ | 2,011.34 |
| 410 | Joseph Mueller | $ | 86.24 |
| 411 | Joseph Stacey | $ | 27.79 |
| 412 | Joseph Stewart | $ | 2,125.45 |
| 413 | Joseph Weber | $ | 104.26 |
| 414 | Joseph Yarber | $ | 205.34 |
| 415 | Josh Jones | $ | 273.78 |
| 416 | Joshua Garvey | $ | 320.88 |
| 417 | Joshua Kuechly | $ | 172.09 |
| 418 | Joshua Leach | $ | 59.02 |
| 419 | Joshua M. Portillo | $ | 4,167.39 |
| 420 | Joshua Martin | $ | 180.15 |

| | | | |
|---|---|---|---|
| 421 | Joshua Rogers | $ | 28.29 |
| 422 | Joshua Saliba | $ | 167.96 |
| 423 | Josue Doll | $ | 126.69 |
| 424 | Julia Ruano | $ | 666.22 |
| 425 | Juliana Ewashko | $ | 204.56 |
| 426 | Justice Wonka | $ | 672.98 |
| 427 | Justin Baker | $ | 462.62 |
| 428 | Justin Cole | $ | 277.86 |
| 429 | Justin Dixon | $ | 205.22 |
| 430 | Justin Goldstein | $ | 671.54 |
| 431 | Justin Montgomery | $ | 513.46 |
| 432 | Justin Thompson | $ | 175.60 |
| 433 | Justin Werner | $ | 4,603.15 |
| 434 | Justin Whealton | $ | 49.48 |
| 435 | Kaia Ervin | $ | 93.16 |
| 436 | Kailey Curtis | $ | 206.85 |
| 437 | Kaitlyn Sharp | $ | 1,409.02 |
| 438 | Kaleigh Hundley | $ | 80.26 |
| 439 | Kalli Wierwille | $ | 262.56 |
| 440 | Karen Lindsey | $ | 2,239.79 |
| 441 | Karen Sandoval | $ | 926.32 |
| 442 | Karin Viers | $ | 389.53 |
| 443 | Karris Wharton | $ | 49.21 |
| 444 | Karsyn Teter | $ | 28.21 |
| 445 | Kat Schoettinger | $ | 88.47 |
| 446 | Kat White | $ | 447.16 |
| 447 | Katelyn Duggan | $ | 41.79 |
| 448 | Katherine De Grazia | $ | 236.44 |
| 449 | Katherine Seitz | $ | 196.33 |
| 450 | Katherine Urry | $ | 62.99 |
| 451 | Kathryn Fogo | $ | 166.63 |
| 452 | Kathryn Wenderfer | $ | 500.16 |
| 453 | Katie Saunders | $ | 58.88 |
| 454 | Katy Hunsberger | $ | 186.44 |
| 455 | Kay Nicholson | $ | 1,513.17 |
| 456 | Kayla Nobbs | $ | 360.00 |
| 457 | Kayla Willett | $ | 978.75 |
| 458 | Kazman White | $ | 1,791.75 |
| 459 | Keegan Graham | $ | 212.85 |
| 460 | Keelan Thessin | $ | 71.88 |
| 461 | Keith Guy | $ | 377.45 |
| 462 | Kelly Franklin | $ | 813.28 |
| 463 | Kelly Linton | $ | 742.62 |
| 464 | Kelly Wright | $ | 75.65 |
| 465 | Kelsey Mayhall | $ | 6,560.61 |
| 466 | Kenny Parker | $ | 35.74 |
| 467 | Kevin Roblero | $ | 346.37 |

| | | | |
|---|---|---|---|
| 468 | Kevin Trespalacios | $ | 416.16 |
| 469 | Keybra Martin | $ | 491.08 |
| 470 | Khoi Nguyen | $ | 60.86 |
| 471 | Kira Staubach | $ | 501.82 |
| 472 | Kirby Johanson | $ | 27.97 |
| 473 | Kirk Bright | $ | 3,898.02 |
| 474 | Kolby Chard | $ | 522.76 |
| 475 | Kolby Toney | $ | 26.56 |
| 476 | Kristin Padilla | $ | 111.68 |
| 477 | Kristopher Cox | $ | 1,385.37 |
| 478 | Kumar Tirwa | $ | 467.62 |
| 479 | Kwame Boakye | $ | 59.32 |
| 480 | Kyla Miller | $ | 396.06 |
| 481 | Kyle Bannon | $ | 818.14 |
| 482 | Kyle Belleman | $ | 34.35 |
| 483 | Kyle Martin | $ | 152.46 |
| 484 | Kyle McGurn | $ | 525.89 |
| 485 | Kyle Rojek | $ | 402.19 |
| 486 | Lacye Cummins | $ | 164.15 |
| 487 | Lakha Miles | $ | 554.48 |
| 488 | Larissa Dyson | $ | 58.71 |
| 489 | Larry Cardona | $ | 584.11 |
| 490 | Lauren Epperson | $ | 63.75 |
| 491 | Leah Ousley | $ | 118.63 |
| 492 | Leaha Marsh | $ | 657.94 |
| 493 | Lee Michael Ice | $ | 320.06 |
| 494 | Levent Kurucay | $ | 1,036.60 |
| 495 | Levi Kirby | $ | 27.64 |
| 496 | Lindsey McClure | $ | 1,467.85 |
| 497 | Liza Rash | $ | 47.78 |
| 498 | Logan Land | $ | 51.38 |
| 499 | Logan Maxfield | $ | 205.90 |
| 500 | Loreal Gavin | $ | 1,333.19 |
| 501 | Loretta Tatum | $ | 1,216.83 |
| 502 | Louie Correa-Hernandez | $ | 2,242.74 |
| 503 | Luis Carrillo-Baez | $ | 344.92 |
| 504 | Lukas VanZandt | $ | 68.17 |
| 505 | Luke Barry | $ | 610.14 |
| 506 | Luke Collins | $ | 54.62 |
| 507 | Lydia Bennett | $ | 398.77 |
| 508 | Madeline Davis | $ | 473.48 |
| 509 | Madison Wright | $ | 161.61 |
| 510 | Madison Young | $ | 550.90 |
| 511 | Maggie Shouldis | $ | 405.87 |
| 512 | Maggie Wallace | $ | 1,244.23 |
| 513 | Maigan Dietrich | $ | 71.10 |
| 514 | Marcus Alex Ziebold | $ | 1,071.06 |

| 515 | Marilyn Young | $ | 3,725.53 |
|---|---|---|---|
| 516 | Mark Burns | $ | 90.84 |
| 517 | Mark Bussard | $ | 1,627.09 |
| 518 | Mark Glinka | $ | 529.55 |
| 519 | Mark Phillips | $ | 835.46 |
| 520 | Mary Bridgette Donnelly | $ | 1,920.91 |
| 521 | Mason Ransdell | $ | 67.98 |
| 522 | Mathew Spivey | $ | 35.62 |
| 523 | Matt Wiencek | $ | 900.03 |
| 524 | Matthew Boyce | $ | 524.08 |
| 525 | Matthew Colwell | $ | 35.94 |
| 526 | Matthew Gerguis | $ | 159.31 |
| 527 | Matthew Graven | $ | 2,456.86 |
| 528 | Matthew Hanke | $ | 966.43 |
| 529 | Matthew Hargitt | $ | 3,062.88 |
| 530 | Matthew Kuhlenbeck | $ | 36.64 |
| 531 | Matthew Lange | $ | 131.03 |
| 532 | Matthew Looby | $ | 319.98 |
| 533 | Matthew Rucker | $ | 118.36 |
| 534 | Max Raymer | $ | 6,287.70 |
| 535 | Max Urton | $ | 58.77 |
| 536 | Maxwell Henkaline | $ | 264.54 |
| 537 | Maxwell Klonne | $ | 280.81 |
| 538 | Maxwell Kovacs | $ | 66.98 |
| 539 | Mayo Howlett | $ | 1,394.19 |
| 540 | McKenzie Bailey | $ | 49.84 |
| 541 | McKenzie English | $ | 198.66 |
| 542 | McLain Yost | $ | 40.59 |
| 543 | Megan Wehrman | $ | 2,688.08 |
| 544 | Melvin Cabrera | $ | 28.21 |
| 545 | Merideth Mullin | $ | 117.59 |
| 546 | Michael Davis | $ | 80.78 |
| 547 | Michael G. Gunther | $ | 1,959.51 |
| 548 | Michael Griffin | $ | 161.09 |
| 549 | Michael M. Mains | $ | 2,001.25 |
| 550 | Michael Maya | $ | 1,260.37 |
| 551 | Michael Parsley | $ | 1,500.59 |
| 552 | Michael Russell | $ | 119.02 |
| 553 | Michael S. Schwaller | $ | 105.00 |
| 554 | Michael Wilson | $ | 27.40 |
| 555 | Michelle Wise | $ | 569.26 |
| 556 | Mikayla Hinton | $ | 44.72 |
| 557 | Mike Stiens | $ | 4,040.71 |
| 558 | Mitchell Brodbeck | $ | 538.31 |
| 559 | Morgan Pangallo | $ | 122.09 |
| 560 | Morgan Stone | $ | 194.71 |
| 561 | Morgan Wright | $ | 59.27 |

| 562 | Nate Webster | $ | 178.42 |
|-----|--------------|---|--------|
| 563 | Nathan Harmon | $ | 1,849.22 |
| 564 | Nathan Jackson | $ | 379.61 |
| 565 | Nathan Sheperd | $ | 234.75 |
| 566 | Nathaniel Brown | $ | 108.17 |
| 567 | Nathaniel Race | $ | 353.07 |
| 568 | Nathaniel Webster | $ | 51.47 |
| 569 | Natwan Webster | $ | 95.06 |
| 570 | Neil Dyk | $ | 887.41 |
| 571 | Neil Ross | $ | 87.63 |
| 572 | Nelson Cagle | $ | 67.64 |
| 573 | Nevarre Mulderink | $ | 1,435.78 |
| 574 | Nicholas Kaszynski | $ | 1,923.99 |
| 575 | Nicholas L'Italien | $ | 78.02 |
| 576 | Nicholas Schumacher | $ | 337.93 |
| 577 | Nicholas Suedkamp | $ | 552.39 |
| 578 | Nicholas Uhl | $ | 98.70 |
| 579 | Nick Fischer | $ | 65.06 |
| 580 | Nick L Legel | $ | 5,422.04 |
| 581 | Nicolas Collins | $ | 87.25 |
| 582 | Nicole Galligan | $ | 559.83 |
| 583 | Nicole Henderson | $ | 200.50 |
| 584 | Nicole Wimmer | $ | 483.39 |
| 585 | Nigel Haddad | $ | 86.27 |
| 586 | Nirmesh Agrawal | $ | 1,801.27 |
| 587 | Noah Fentress | $ | 93.92 |
| 588 | Olivia Broadus | $ | 128.13 |
| 589 | Olivia Jones | $ | 373.64 |
| 590 | Olivia Rooks | $ | 581.60 |
| 591 | Olivia Smith | $ | 413.54 |
| 592 | Olivia Wolf | $ | 179.61 |
| 593 | Omer Kurtulus | $ | 396.61 |
| 594 | Onah Montgomery | $ | 513.78 |
| 595 | Ozzie McEachin | $ | 306.45 |
| 596 | Pablo Sierra | $ | 689.12 |
| 597 | Pacer Buell | $ | 866.92 |
| 598 | Patrick Chesnut | $ | 617.78 |
| 599 | Patrick Cullenen | $ | 2,052.75 |
| 600 | Patrick McCarthy | $ | 358.06 |
| 601 | Patrick Parsons | $ | 69.37 |
| 602 | Paul Clark | $ | 2,799.34 |
| 603 | Paul Hensel | $ | 4,787.12 |
| 604 | Paul Rains | $ | 36.69 |
| 605 | Paul Sandfoss | $ | 1,705.87 |
| 606 | Paul Ward | $ | 631.85 |
| 607 | Paula Zalar | $ | 345.35 |
| 608 | Payton Karp | $ | 32.20 |

| 609 | Payton Pleiman | $ | 426.05 |
|-----|----------------|---|--------|
| 610 | Pedro Triqueiros | $ | 1,460.00 |
| 611 | Peggy Sullivan | $ | 41.43 |
| 612 | Peter Lind | $ | 2,382.46 |
| 613 | Peyton King | $ | 998.83 |
| 614 | Philip Aschi | $ | 2,392.28 |
| 615 | Phillip Bunse | $ | 1,034.26 |
| 616 | Pierre Daniels | $ | 31.19 |
| 617 | Piper Phillips | $ | 444.61 |
| 618 | Prabjit Kaler | $ | 559.54 |
| 619 | Preston Hawver | $ | 3,172.57 |
| 620 | Priscilla Ruano | $ | 1,236.79 |
| 621 | Quinn Callahan | $ | 306.04 |
| 622 | Quinn Curran | $ | 189.90 |
| 623 | Rachel Gurley | $ | 257.20 |
| 624 | Rachel McIntyre | $ | 1,968.21 |
| 625 | Ramon Roig | $ | 441.30 |
| 626 | Randy Hohensee | $ | 1,199.45 |
| 627 | Randy Roberts | $ | 220.86 |
| 628 | Raphael Marrillia | $ | 404.62 |
| 629 | Reed Terrell | $ | 44.28 |
| 630 | Rene Sabol | $ | 356.91 |
| 631 | Richard Mack | $ | 189.08 |
| 632 | Richard Semeria | $ | 58.77 |
| 633 | Rider Anders | $ | 128.60 |
| 634 | Rob Hotz | $ | 464.06 |
| 635 | Robert B. Buckman | $ | 3,088.90 |
| 636 | Robert C. Cook | $ | 667.41 |
| 637 | Robert Lafever | $ | 73.02 |
| 638 | Robert Long | $ | 1,279.71 |
| 639 | Robert Newton | $ | 63.66 |
| 640 | Robert Rapp | $ | 363.25 |
| 641 | Robert Smalley | $ | 790.74 |
| 642 | Robert Wilson | $ | 112.72 |
| 643 | Russ Beshear | $ | 108.22 |
| 644 | Russell Clausen | $ | 138.17 |
| 645 | Ryan Byrne | $ | 584.80 |
| 646 | Ryan Haacke | $ | 1,588.00 |
| 647 | Ryan Kalb | $ | 745.64 |
| 648 | Ryan McCarren | $ | 133.45 |
| 649 | Ryan Mechley | $ | 97.31 |
| 650 | Ryan R. Russell | $ | 317.63 |
| 651 | Ryan Robinson | $ | 1,152.90 |
| 652 | Ryan Wallace | $ | 287.84 |
| 653 | Rylee Sander | $ | 134.45 |
| 654 | Sabrina Siry | $ | 183.73 |
| 655 | Sam Bischoff | $ | 147.90 |

| 656 | Sam Ross | $ | 38.74 |
|-----|----------|---|-------|
| 657 | Samantha Rogers | $ | 100.88 |
| 658 | Samir Welden | $ | 47.75 |
| 659 | Samuel Bumiller | $ | 57.94 |
| 660 | Samuel Cass | $ | 735.60 |
| 661 | Samuel Griffith | $ | 90.39 |
| 662 | Samuel Johnson | $ | 138.79 |
| 663 | Samuel King | $ | 45.27 |
| 664 | Samuel Pottinger | $ | 295.68 |
| 665 | Sara Rogers | $ | 626.63 |
| 666 | Sarah Beaty | $ | 3,562.76 |
| 667 | Sarah Schmuck | $ | 1,785.16 |
| 668 | Scott Thomas | $ | 69.81 |
| 669 | Sean Burns | $ | 3,297.05 |
| 670 | Sebastian Cardenas | $ | 389.23 |
| 671 | Seth Dreyer | $ | 129.61 |
| 672 | Seth Ellison | $ | 28.17 |
| 673 | Seth Yeary | $ | 406.86 |
| 674 | Shaan Firdaus | $ | 44.56 |
| 675 | Shane Butts | $ | 32.20 |
| 676 | Shannon Hesketh | $ | 738.12 |
| 677 | Shannon Williams | $ | 27.79 |
| 678 | Shasta Stewart | $ | 673.89 |
| 679 | Shaun H Hedges | $ | 1,449.47 |
| 680 | Shawn S Soper | $ | 1,517.44 |
| 681 | Shelby Carpenter | $ | 199.12 |
| 682 | Shelby Higginbotham | $ | 1,515.39 |
| 683 | Shelby Miller | $ | 5,888.78 |
| 684 | Shelby Nance | $ | 407.20 |
| 685 | Shelby Poynter | $ | 464.30 |
| 686 | Shelby Shepard | $ | 189.44 |
| 687 | Shelby Ventura | $ | 154.14 |
| 688 | Shelby Zurborg | $ | 1,316.07 |
| 689 | Silas Shake | $ | 59.77 |
| 690 | Simon Matern | $ | 46.24 |
| 691 | Simone Mullaley | $ | 951.83 |
| 692 | Sonny Mercer | $ | 123.23 |
| 693 | Sophia Carlucci | $ | 313.71 |
| 694 | Sophia Clark | $ | 208.73 |
| 695 | Sophia Kuchenbuck | $ | 279.90 |
| 696 | Sophia Shoemaker | $ | 747.32 |
| 697 | Spencer Diamond | $ | 3,267.76 |
| 698 | Stacie Bruno | $ | 179.79 |
| 699 | Stephanie Magliano | $ | 1,183.55 |
| 700 | Stephen McVicker | $ | 4,241.29 |
| 701 | Steven Bain | $ | 44.95 |
| 702 | Susan Balistreri | $ | 2,091.59 |

| 703 | Sydney Dobson | $ | 31.14 |
|-----|---------------|---|-------|
| 704 | Sydney Ilg | $ | 1,568.52 |
| 705 | Sydney Robinson | $ | 425.76 |
| 706 | Sylvia Witt | $ | 41.79 |
| 707 | Tae Brewster | $ | 1,954.14 |
| 708 | Tanner Woodside | $ | 46.03 |
| 709 | Taylor Baresel | $ | 300.88 |
| 710 | Taylor Brittain | $ | 106.07 |
| 711 | Taylor Garner | $ | 31.14 |
| 712 | Taylor Holt | $ | 360.27 |
| 713 | Taylor McCreary | $ | 920.39 |
| 714 | Taylor Rogers | $ | 401.52 |
| 715 | Taylor Sorg | $ | 79.37 |
| 716 | Terrance Ryan Mangan | $ | 50.71 |
| 717 | Tess Geiger | $ | 773.30 |
| 718 | Thiago Alves | $ | 60.61 |
| 719 | Thomas Eger | $ | 2,063.09 |
| 720 | Thomas Hendricks | $ | 77.19 |
| 721 | Thomas S Sadens | $ | 1,961.01 |
| 722 | Thomas Schwartz | $ | 141.74 |
| 723 | Thomas T Thacker | $ | 1,579.99 |
| 724 | Tiffany Jones | $ | 93.07 |
| 725 | Todd Siegel | $ | 312.80 |
| 726 | Tony Friedman | $ | 932.97 |
| 727 | Travis Hale | $ | 1,358.82 |
| 728 | Trevin Chandler | $ | 38.19 |
| 729 | Trey Burge | $ | 428.54 |
| 730 | Trey Minton | $ | 1,573.45 |
| 731 | Trystan Porginski | $ | 91.11 |
| 732 | Tucker Larsh | $ | 1,707.70 |
| 733 | Tylan Stewart | $ | 497.63 |
| 734 | Tyler Barrick | $ | 121.57 |
| 735 | Tyler Cumbea | $ | 925.39 |
| 736 | Tyler Day | $ | 36.18 |
| 737 | Tyler Elmes | $ | 26.20 |
| 738 | Tyler Ference | $ | 183.55 |
| 739 | Tyler Reusch | $ | 53.42 |
| 740 | Tyreek Knott | $ | 34.21 |
| 741 | Umit Ayyildiz | $ | 2,275.88 |
| 742 | Valaya Lalonde | $ | 662.00 |
| 743 | Vito Sabino | $ | 215.73 |
| 744 | William Alexander Landrum | $ | 53.78 |
| 745 | William Boykin | $ | 159.98 |
| 746 | William Parker Clarke | $ | 327.45 |
| 747 | Winston Duncan | $ | 1,865.98 |
| 748 | Yasser Perez | $ | 549.78 |
| 749 | Yonas Meredith | $ | 257.43 |

| | | | |
|---|---|---|---|
| 750 | Yulia Morosava | $ | 69.51 |
| 751 | Zachariah Claypool | $ | 413.19 |
| 752 | Zachary Bley | $ | 53.64 |
| 753 | Zachary Combs | $ | 1,007.53 |
| 754 | Zachary Minturn | $ | 61.88 |
| 755 | Zachary Sundin | $ | 88.46 |
| 756 | Zachary Uahinui | $ | 335.96 |
| 757 | Zachary Wooten | $ | 29.80 |
| 758 | Zackary Nellom | $ | 234.51 |
| 759 | Zoe Crabtree | $ | 437.31 |
| 760 | Zoyie Davidson | $ | 459.97 |
| | **TOTAL** | **$ 528,646.08** | |

# EXHIBIT C

**EXHIBIT C**

| | NAME | AMOUNT |
|---|---|---|
| 1 | Gerardo Aguero | $5,306.88 |
| 2 | Heston Alley | $23.80 |
| 3 | Chelsey Anderson | $926.52 |
| 4 | Andrew Bachman | $691.25 |
| 5 | Clayton Baker | $11,728.94 |
| 6 | Marlys Baker | $8,998.85 |
| 7 | Liam Barrett | $1,037.98 |
| 8 | Stefanie Bell | $3,273.32 |
| 9 | Jim Belmont | $6,528.50 |
| 10 | Jason Blandford | $7,177.55 |
| 11 | Michael Branch | $501.32 |
| 12 | Griffen Bretz | $3,034.90 |
| 13 | Kristian Brisbane | $180.92 |
| 14 | Brennen Davidson | $1,947.46 |
| 15 | Matthew Bryant | $2,618.09 |
| 16 | Katherine Bryson | $9,337.50 |
| 17 | Chayse Buecker | $990.03 |
| 18 | Michael Casey | $1,136.40 |
| 19 | Joseph Chapman | $2,118.42 |
| 20 | Tyler Childress | $7,301.10 |
| 21 | Cameron Clarke | $520.26 |
| 22 | Katrina Contreras | $1,597.81 |
| 23 | Raquel Contreras | $4,892.10 |
| 24 | Ainsley Cook | $704.92 |
| 25 | Dandre Cornelius | $385.84 |
| 26 | Olivia Cox | $8,615.80 |
| 27 | Mariah Crawford | $1,228.99 |
| 28 | Erika Curley | $1,351.33 |
| 29 | Bowen Daniel | $3,218.26 |
| 30 | Olivia Dismeaux | $3,278.10 |
| 31 | Colin Dolan | $3,010.37 |
| 32 | Colin Dolin | $4,224.22 |
| 33 | Tyler Drake | $585.65 |
| 34 | JUSTIN ELLISON | $12,609.90 |
| 35 | Gunnar Falk | $4,296.57 |
| 36 | Savannah Farahay | $6,651.52 |
| 37 | Kaden Ferguson | $4,203.07 |
| 38 | Kelton Ferguson | $4,361.45 |
| 39 | Erie Fisher | $1,449.53 |
| 40 | Ryan Fisher | $150.45 |
| 41 | Cydney Francois | $209.19 |
| 42 | Phillip Gardner | $1,484.14 |
| 43 | Christopher Gering | $10,443.34 |
| 44 | Tyler Gibson | $1,278.89 |

| | | |
|---|---|---|
| 45 | Deborah Gikhman | $263.29 |
| 46 | Aaron Hagan | $5,310.27 |
| 47 | Mason Haggard | $5,652.20 |
| 48 | DeNisha Harbison | $367.22 |
| 49 | Thomas Hartung | $15,053.54 |
| 50 | Kara Hartzler | $374.17 |
| 51 | Elaina Haselwood | $2,259.84 |
| 52 | Skyler Hayes | $965.02 |
| 53 | Evan Hedrick | $12,321.17 |
| 54 | Jonathan Hostettler | $124.38 |
| 55 | Brandon Hurst | $2,296.71 |
| 56 | Joi Hutcherson | $126.33 |
| 57 | Samuel Jacobs | $2,286.61 |
| 58 | Joshua Jacobson | $1,078.21 |
| 59 | Ryan Janka | $1,388.79 |
| 60 | Brandi Johnson | $1,465.97 |
| 61 | Randi Johnson | $493.06 |
| 62 | Aydan Jones | $3,840.97 |
| 63 | Ben Jones | $2,017.36 |
| 64 | David Kallman | $7,646.97 |
| 65 | Garrett Kays | $1,483.80 |
| 66 | Graham Koenig | $3,914.41 |
| 67 | Timothy Koenig | $314.19 |
| 68 | Morgan Laffoon | $261.20 |
| 69 | Johnathan Lamb | $10,884.91 |
| 70 | Samantha Lazaro | $17.23 |
| 71 | Aubrey Lightner | $531.78 |
| 72 | Nicole Loboda | $952.39 |
| 73 | Trace Loptien | $1,880.63 |
| 74 | Darrell Maggard | $6,703.63 |
| 75 | Elliott McCann | $6,265.24 |
| 76 | Melissa McVicker | $2,556.77 |
| 77 | Angel Melendez | $10,253.17 |
| 78 | Zacary Minturn | $6,596.06 |
| 79 | Peter Moe | $2,018.42 |
| 80 | Hileen Mohammad | $1,260.93 |
| 81 | Samuel Moore | $7,339.40 |
| 82 | Billy Murphy | $1,894.90 |
| 83 | Kevin Nichelson | $991.12 |
| 84 | Jillian Osborne | $1,038.91 |
| 85 | Joshua O Osborne | $5,194.93 |
| 86 | Barrett Parnell | $7,759.57 |
| 87 | Kylie Poe | $7,658.77 |
| 88 | Grant Popp | $81.99 |
| 89 | Jeremy Portilio | $905.65 |
| 90 | Matthew Pulver | $868.96 |
| 91 | Benton Quarles | $3,192.10 |

| | | |
|---|---|---:|
| 92 | Clay Rains | $159.44 |
| 93 | Logan Randall | $5,336.06 |
| 94 | Chelsea Ray | $6,614.93 |
| 95 | Nick Reilman | $3,390.80 |
| 96 | Christopher Reithmeier | $1,196.82 |
| 97 | Dalton Robinson | $3,511.16 |
| 98 | Nicholas Rourke | $5,973.18 |
| 99 | Baird Rowe | $306.62 |
| 100 | DJ Saltigerald | $1,558.26 |
| 101 | John Saltigerald | $8,859.85 |
| 102 | Nichole Searles | $71.04 |
| 103 | Ryan Schaffner | $19,149.22 |
| 104 | Ayden Shepard | $17,622.12 |
| 105 | Michael Sinclair | $4,175.04 |
| 106 | Kevin Solhjoo | $1,543.04 |
| 107 | Joshua Stivers | $10,057.60 |
| 108 | Zoie Stoner | $197.42 |
| 109 | Chris Sullivan | $3,404.69 |
| 110 | James Thompson | $5,409.02 |
| 111 | Hanna Thornton | $3,095.47 |
| 112 | Alexandra Suarez-Valencia | $392.44 |
| 113 | Morgan Vandevelde | $438.11 |
| 114 | Erich Von Landsberg | $7,724.13 |
| 115 | Jordan Walker | $8,760.50 |
| 116 | Benjamin Warfield | $1,461.22 |
| 117 | Dylan Waugh | $74.69 |
| 118 | Kenton Weaver | $1,093.98 |
| 119 | Marcos Welch | $1,817.16 |
| 120 | Cameron Welling | $6,718.28 |
| 121 | Debbie Williams | $9,221.50 |
| 122 | Maggie Winterling | $12,047.84 |
| 123 | Tristan Winters | $1,055.46 |
| 124 | Conrad Wolfe | $1,765.36 |
| 125 | Austin Wolfinbarger | $260.13 |
| 126 | Sydney Wright | $1,110.18 |
| 127 | Mason Yeast | $2,016.59 |
| | **TOTAL** | **$ 471,353.92** |

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHNATHAN LAMB and JIM BELMONT, On Behalf of Themselves and All Others Similarly Situated, | ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | **CLASS AND COLLECTIVE ACTION** |
| JEFF RUBY CULINARY ENTERTAINMENT, INC., THE PRECINCT, INC., CARLO & JOHNNY'S, LTD., JEFF RUBY STEAKHOUSE, LLC, JEFF RUBY'S COLUMBUS, LLC, JEFF RUBY'S STEAKHOUSE LEXINGTON, LLC, JEFF RUBY'S LOUISVILLE, LLC, and JEFF RUBY'S NASHVILLE, LLC, d/b/a JEFF RUBY CULINARY ENTERTAINMENT, | ) ) ) ) ) ) ) ) ) ) ) ) | **CASE NO. _____** **JURY DEMAND** |
| *Defendants*. | ) ) | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

### I. INTRODUCTION

1.     Plaintiffs Johnathan Lamb ("Plaintiff Lamb") and Jim Belmont ("Plaintiff Belmont" (collectively referred to as "Plaintiffs") bring this action against Defendants Jeff Ruby Culinary Entertainment, Inc., The Precinct, Inc., Carlo & Johnny's, Ltd., Jeff Ruby Steakhouse, LLC, Jeff Ruby's Columbus, LLC, Jeff Ruby's Steakhouse Lexington, LLC, Jeff Ruby's Louisville, LLC, and Jeff Ruby's Nashville, LLC (collectively, "Defendants"). Defendants are a single enterprise that does business under the name of Jeff Ruby Culinary Entertainment operating seven luxury steakhouses across Ohio, Kentucky, and Tennessee.

2.     The claims asserted in this action are identical to those asserted in a collective and class action entitled *Lamb et al. v. Jeff Ruby Culinary Entertainment, Inc.*, 1:24-cv-00097 (S.D.

1

Ohio.) (referred to herein as *Lamb* I). In *Lamb* I, approximately one hundred and twenty-seven (127) individuals, including Named Plaintiffs Johnathon Lamb and Jim Belmont, asserted claims under the FLSA. The Parties have stipulated that the FLSA claims asserted by Plaintiffs in *Lamb* I shall be deemed filed and tolled in this action on the date such claims were filed in *Lamb* I. In *Lamb* I, Named Plaintiff Lamb asserted class action claims for violation of the Kentucky Wages and Hours Act ("KWHA"), KRS 337.010 *et seq.*, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Parties have stipulated that Plaintiff Lamb's KWHA class action claims shall be tolled on the same date that they were filed in *Lamb* I. In *Lamb* I, Named Plaintiff Belmont asserted class action claims for violation of the Ohio Minimum Fair Wage Standards Act (the "Ohio Wage Act"), O.R.C. §§ 4111, *et seq.*; the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15; and the Ohio Constitution, Art. II Section 34a. (collectively referred to herein as the "Ohio Wage Laws"), pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Parties have stipulated that Plaintiff Belmont's Ohio Wage Laws class action claims shall be tolled on the same date that they were filed in *Lamb* I.

      3.     Plaintiffs bring these claims against Defendants, who were their employers, in order to recover unpaid minimum and overtime wages, unlawfully retained tips, liquidated damages, restitution, attorneys' fees, costs, and all other damages available under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the KWHA; the Ohio Minimum Fair Wage Standards Act (the "Ohio Wage Act"), O.R.C. §§ 4111, *et seq.*; the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15; and the Ohio Constitution, Art. II Section 34a. The Ohio Wage Act, the OPPA, and Art. II, Section 34a of the Ohio Constitution are collectively referred to herein as the "Ohio Wage Laws." Plaintiffs bring their FLSA claims as a collective action on behalf of themselves and all other similarly situated employees who file their written consent to join this action pursuant to

29 U.S.C. § 216(b). Plaintiffs bring their respective state-law claims pursuant to Rule 23 of the Federal Rules of Civil Procedure.

4.     Plaintiffs and those similarly situated are current and former employees of Defendants at one or more of their seven steakhouses who were paid a tipped hourly wage less than the statutory $7.25 per hour minimum wage and $10.88 per hour minimum overtime wage for hours worked over 40 in a workweek (or the applicable Ohio minimum wage and minimum overtime wage rates) and for whom Defendants relied on the "tip credit" provisions of the FLSA and applicable state laws to satisfy their statutory minimum wage obligations (hereafter, "Tip Credit Employees"). These Tip Credit Employees include, for example, servers and bartenders.

5.     Defendants violated the FLSA, KWHA, and the Ohio Wage Laws because they required Tip Credit Employees to: (1) share tips with back-of-house employees who earn have no or only *de minimis* interaction with customers while taking a tip credit; (2) spend substantial amounts of time performing non-tip-producing and directly supporting work tasks before and after serving customers and throughout their shift while being paid less than the statutory minimum wage and not working in a tipped occupation for defined periods of time; and (3) spend time working at the beginning of their shifts without being clocked in for pay purposes as reflected in Defendants' records of their scheduled start time when they arrived and their clock-in time when they were finally able to clock in for pay purposes.

6.     Until and through June 30, 2022, Defendants also violated the KWHA because they unlawfully required Tip Credit Employees to remit their tips for distribution among other employees, in violation of KRS 337.065, which (prior to July 1, 2022) prohibited an employer from "requir[ing] an employee to participate in a tip pool whereby the employee is required to remit to the pool any gratuity, or any portion thereof, for distribution among employees of the

employer."[1]

7.    Because the requirements for taking the tip credit were not satisfied, Defendants were not permitted to rely on it to satisfy their minimum wage and overtime obligations under the FLSA, KWHA, and the Ohio Wage Laws and were required to pay the entire statutory minimum wage and overtime wage.

8.    Under the FLSA, KWHA, and the Ohio Wage Laws, Defendants may not retain tips other than to contribute them pursuant to a lawful tip-share or tip-pool of employees who customarily and regularly receive tips. By using and retaining these tips to pay back-of-house employees, Defendants retained tips earned by Plaintiffs and other Tip Credit Employees for their own benefit and are required to return the tips to the employees who earned them and pay liquidated damages.

## II.  JURISDICTION AND VENUE

9.    This Court has jurisdiction over Plaintiffs' claims because they are brought pursuant to the FLSA, 29 U.S.C. § 216(b), and because they raise a federal question pursuant to 28 U.S.C. § 1331.  The Parties have stipulated to this Court's jurisdiction over this action.

10.    This Court has jurisdiction over Plaintiffs' supplemental state law claims pursuant to 28 U.S.C. § 1367. The Parties have stipulated to this Court's jurisdiction over this action.

11.    Venue for this action properly lies in the Middle District of Tennessee, pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.  The Parties have stipulated that venue for this action properly lies in the Middle District of Tennessee.

---

[1]    The Kentucky Legislature amended KRS 337.065 to permit mandatory tip pooling effective July 1, 2022.

4

### III. PARTIES

**A.    Plaintiff**

12.    Plaintiff Lamb is a resident of Stanford, Lincoln County, Kentucky.

13.    Defendants employed Plaintiff Lamb as a server at their Jeff Ruby's Steakhouse restaurant located in Lexington, Kentucky from approximately February 2019 through approximately March 2023.

14.    Throughout his employment, Defendants paid Plaintiff Lamb hourly wages less than the statutory $7.25 per hour minimum wage and the $10.88 per hour minimum overtime wage and relied on customer tips to satisfy their minimum wage obligations to Plaintiff Lamb, pursuant to the tip-credit provisions of the FLSA and KWHA.

15.    Plaintiff Belmont is a resident of Cincinnati, Hamilton County, Ohio.

16.    Defendants employed Plaintiff Belmont as a server at their Carlo and Johnny's restaurant located in Cincinnati, Ohio from approximately April 2014 through approximately June 2024.

17.    Throughout his employment, Defendants paid Plaintiff Belmont hourly wages less than the statutory $7.25 per hour minimum wage and the $10.88 per hour minimum overtime wage (and less than the applicable Ohio minimum wage and minimum overtime wage rates) and relied on customer tips to satisfy their minimum wage obligations to Plaintiff Belmont, pursuant to the tip-credit provisions of the FLSA and Ohio Wage Laws.

**B.    Defendants**

18.    Jeff Ruby founded Jeff Ruby Culinary Entertainment, which is made up of several entities, including all of the entities named as Defendants in this case.

19.    Jeff Ruby Culinary Entertainment owns and operates several luxury steakhouses.

5

20.     The seven steakhouses owned and operated by Jeff Ruby Culinary Entertainment are:

    a.   The Precinct by Jeff Ruby, located at 311 Delta Avenue, Cincinnati, Ohio 45226;

    b.   Carlo & Johnny by Jeff Ruby, located at 9769 Montgomery Road, Cincinnati, Ohio 45242;

    c.   Jeff Ruby's Steakhouse – Cincinnati, located at 505 Vine Street, Cincinnati, Ohio 45202;

    d.   Jeff Ruby's Steakhouse – Columbus, located at 89 East Nationwide Boulevard, Columbus, Ohio 43215;

    e.   Jeff Ruby's Steakhouse – Lexington, located at 101 West Vine Street, Lexington, Kentucky 40507;

    f.   Jeff Ruby's Steakhouse – Louisville, located at 325 West Main Street, Louisville, Kentucky 40202; and,

    g.   Jeff Ruby's Steakhouse – Nashville, located at 300 4th Avenue North, Nashville, Tennessee 37219.

21.     Defendant Jeff Ruby Culinary Entertainment, Inc. is an Ohio corporation with its principal office located within this judicial district at 700 Walnut Street, Suite 200, Cincinnati, Ohio 45202.

22.     Defendant Jeff Ruby Culinary Entertainment, Inc.'s registered agent is Taft Service Solutions Corp., who can be served at 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202.

23.     Defendant Jeff Ruby Culinary Entertainment, Inc. has at all relevant times been an employer of the employees at the seven steakhouses at issue in this case within the meaning of the FLSA, KWHA, and Ohio Wage Laws.

24.     Defendant Jeff Ruby Culinary Entertainment, Inc.

25.     Defendant The Precinct, Inc. is an Ohio corporation with its principal office located within this judicial district at 700 Walnut Street, Suite 200, Cincinnati, Ohio 45202.

6

26.    Defendant The Precinct, Inc.'s registered agent is Taft Service Solutions Corp., who can be served at 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202.

27.    Defendant The Precinct, Inc. is the entity through which Defendants' business enterprise owns and operates its steakhouse, The Precinct by Jeff Ruby, located at 311 Delta Avenue, Cincinnati, Ohio 45226.

28.    Defendant The Precinct, Inc. has at all relevant times been an employer of the Tip Credit Employees at The Precinct by Jeff Ruby within the meaning of the FLSA and the Ohio Wage Laws.

29.    Defendant Carlo & Johnny's, Ltd. is an Ohio limited liability company with its principal office located within this judicial district at 700 Walnut Street, Suite 200, Cincinnati, Ohio 45202.

30.    Defendant Carlo & Johnny's, Ltd.'s registered agent is Taft Service Solutions Corp., who can be served at 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202.

31.    Defendant Carlo & Johnny's, Ltd. is the entity through which Defendants' business enterprise owns and operates its steakhouse, Carlo & Johnny by Jeff Ruby, located at 9769 Montgomery Road, Cincinnati, Ohio 45242.

32.    Defendant Carlo & Johnny's, Ltd. has at all relevant times been an employer of the Tip Credit Employees at Carlo & Johnny by Jeff Ruby within the meaning of the FLSA and the Ohio Wage Laws.

33.    Defendant Jeff Ruby Steakhouse, LLC is an Ohio limited liability company with its principal office located within this judicial district at 700 Walnut Street, Suite 200, Cincinnati, Ohio 45202.

34.    Defendant Jeff Ruby Steakhouse, LLC's registered agent is Taft Service Solutions

Corp., who can be served at 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202.

35.     Defendant Jeff Ruby Steakhouse, LLC is the entity through which Defendants'
business enterprise owns and operates its steakhouse, Jeff Ruby's Steakhouse – Cincinnati, located
at 505 Vine Street, Cincinnati, Ohio 45202.

36.     Defendant Jeff Ruby Steakhouse, LLC has at all relevant times been an employer
of the Tip Credit Employees at Jeff Ruby's Steakhouse – Cincinnati within the meaning of the
FLSA and the Ohio Wage Laws.

37.     Defendant Jeff Ruby's Columbus, LLC is an Ohio limited liability company with
its principal office located within this judicial district at 700 Walnut Street, Suite 200, Cincinnati,
Ohio 45202.

38.     Defendant Jeff Ruby's Columbus, LLC's registered agent is Taft Service Solutions
Corp., who can be served at 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202.

39.     Defendant Jeff Ruby's Columbus, LLC is an entity through which Defendants'
business enterprise owns and operates its steakhouse, Jeff Ruby's Steakhouse – Columbus, located
at 89 East Nationwide Boulevard, Columbus, Ohio 43215.

40.     Defendant Jeff Ruby's Columbus, LLC has at all relevant times been an employer
of the Tip Credit Employees at Jeff Ruby's Steakhouse – Columbus within the meaning of the
FLSA and the Ohio Wage Laws.

41.     Defendant Jeff Ruby's Steakhouse Lexington, LLC is Kentucky limited liability
company with its principal office located within this judicial district at 700 Walnut Street, Suite
200, Cincinnati, Ohio 45202.

42.     Defendant Jeff Ruby's Steakhouse Lexington, LLC's registered agent is Taft
Service Solutions Corp., who can be served at 50 East Rivercenter Boulevard, Suite 850,

Covington, Kentucky 41011.

43.     Defendant Jeff Ruby's Steakhouse Lexington, LLC is the entity through which Defendants' business enterprise owns and operates its steakhouse, Jeff Ruby's Steakhouse – Lexington, located at 101 West Vine Street, Lexington, Kentucky 40507.

44.     Defendant Jeff Ruby's Steakhouse Lexington, LLC has at all relevant times been an employer of the Tip Credit Employees at Jeff Ruby's Steakhouse – Lexington within the meaning of the FLSA and KWHA.

45.     Defendant Jeff Ruby's Louisville, LLC is Kentucky limited liability company with its principal office located within this judicial district at 700 Walnut Street, Suite 200, Cincinnati, Ohio 45202.

46.     Defendant Jeff Ruby's Louisville, LLC's registered agent is Taft Service Solutions Corp., who can be served at 50 East Rivercenter Boulevard, Suite 850, Covington, Kentucky 41011.

47.     Defendant Jeff Ruby's Louisville, LLC is the entity through which Defendants' business enterprise owns and operates its steakhouse, Jeff Ruby's Steakhouse – Louisville, located at 325 West Main Street, Louisville, Kentucky 40202.

48.     Defendant Jeff Ruby's Louisville, LLC has at all relevant times been an employer of the Tip Credit Employees at Jeff Ruby's Steakhouse – Louisville within the meaning of the FLSA and KWHA.

49.     Defendant Jeff Ruby's Nashville, LLC is an Ohio limited liability company with its principal office located within this judicial district at 700 Walnut Street, Suite 200, Cincinnati, Ohio 45202.

50.     Defendant Jeff Ruby's Nashville, LLC's registered agent is Taft Service Solutions

9

Corp., who can be served at 425 Walnut Street, Suite 1800, Cincinnati, Ohio 45202.

51.     Defendant Jeff Ruby's Nashville, LLC is the entity through which Defendants' business enterprise owns and operates its steakhouse, Jeff Ruby's Steakhouse – Nashville, located at 300 4th Avenue North, Nashville, Tennessee 37219.

52.     Defendant Jeff Ruby's Nashville, LLC has at all relevant times been an employer of the Tip Credit Employees at Jeff Ruby's Steakhouse – Nashville within the meaning of the FLSA.

53.     Together, Defendants comprise the enterprise Jeff Ruby Culinary Entertainment.

54.     Defendants have a common corporate headquarters, which are publicly identified as the corporate headquarters of Jeff Ruby Culinary Entertainment, located at 700 Walnut Street, Suite 200, Cincinnati, Ohio 45202.

55.     Defendants share the same Jeff Ruby Culinary Entertainment corporate executive team, management, and ownership.

56.     Defendants hold themselves out as, act as, and in fact comprise a single enterprise that has more than 800 employees.

57.     Defendants centrally control employment policies and practices for all of their seven steakhouses.

58.     Defendants' corporate-level management, including executives and human resources officials, conduct all-restaurant meetings and travel to each restaurant regularly to oversee business operations, address employment issues, and specifically implement pay and other employment practices and policies.

59.     Defendants share a common purpose of operating luxury steakhouse restaurants.

60.     Defendants transfer employees between restaurants, including both management-

level employees and Tip Credit Employees (as defined above).

61.     Defendants' enterprise acts through each of the Defendants.

62.     Furthermore, each of the Defendants acts directly in the interest of itself and of the other entities comprising the enterprise as an employer in relation to the employees at each of the seven steakhouses.

63.     Thus, each Defendant is a "person" (within the meaning of the FLSA, KWHA, and Ohio Wage Laws) "acting directly or indirectly in the interest of an employer in relation to an employee." *See* 29 U.S.C. §§ 203(a), (d); KRS 337.010(1)(d); O.R.C. 4112.01(A).

64.     As a result, Defendants, both individually and collectively, employ the employees of each of the seven steakhouses within the meaning of the FLSA, KWHA, and the Ohio Wage Laws.

## IV.  FACTS

65.     Plaintiffs and those similarly situated are current and former Tip Credit Employees (as defined above) of Defendants at one or more of the seven Jeff Ruby's restaurants in Cincinnati, Ohio (three restaurants); Columbus, Ohio (one restaurant); Lexington, Kentucky (one restaurant); Louisville, Kentucky (one restaurant); and Nashville, Tennessee (one restaurant).

66.     At all relevant times, Defendants paid Plaintiffs and other Tip Credit Employees an hourly wage below the applicable federal and state minimum wage rates.

67.     Defendants purported to utilize the tip credit to comply with their minimum wage obligations to Plaintiffs and other Tip Credit Employees under the FLSA, KWHA, and Ohio Wage Laws.

68.     Defendants used and took a portion of the tips earned by Plaintiffs and other Tip Credit Employees for the purpose of sharing those tips with back-of-house employees who did not

earn the tips and who did not interact with customers or had only *de minimis* interactions with customers, such as service bartenders (who, like cooks, worked entirely in the back of the house).

69.     Defendants then shared the tips they took from Plaintiffs and other Tip Credit Employees with those back-of-house employees.

70.     This benefited Defendants by subsidizing the costs of employing the back-of-house employees who received these tips.

71.     Defendants required Plaintiffs and other Tip Credit Employees to spend substantial amounts of time performing non-tip-producing and directly supporting work while being paid an hourly wage below the applicable federal and state minimum wage rates, including:

      a.   At the beginning of their scheduled shifts, prior to serving customers and including the time when no customers were present in the restaurant (*e.g.*, non-tip-producing and directly supporting work, such as, polishing glassware and silverware, rolling silverware, cleaning booths and baseboards, sweeping, mopping, stocking server stations, bringing in trash cans, slicing bread, slicing butter, polishing and preparing place settings, loading glasses into racks, attending a pre-shift meeting, folding linens (for tables, breads, and wine presentation), etc.);

      b.   At the end of their scheduled shifts, after serving customers and including the time when no customers were present in the restaurant (*e.g.*, non-tip-producing and directly supporting work, such as, taking out trash, polishing glassware and silverware, cleaning booths and baseboards, sweeping, mopping, vacuuming, rolling silverware, folding linens (for tables, breads, and wine presentation), completing tip-out tasks, etc.); and,

      c.   Throughout their scheduled shifts, during time periods when some customers were present in the restaurants (*e.g.*, non-tip-producing and directly supporting work, such as, polishing glassware and silverware, rolling silverware, cleaning booths and baseboards, sweeping, mopping, stocking server stations, bringing in trash cans, slicing bread, slicing butter, polishing and preparing place settings, loading glasses into racks, folding linens (for tables, breads, and wine presentation), etc.).

72.     For example, Plaintiffs typically arrived at their scheduled worktime as reflected in Defendants' records approximately one and a half to two hours prior to the restaurant opening to

12

serve customers in order to perform non-tip-producing and directly supporting work tasks (including the tasks listed above above) while being paid at a tipped hourly rate of less than $7.25 (or the applicable Ohio minimum wage rate).

73.     Defendants frequently required Plaintiffs to spend this time working at the beginning of their shifts without being clocked in for pay purposes as reflected in Defendants' records of their scheduled start time when they arrived and their clock-in time when they were finally able to clock in for pay purposes.

74.     Plaintiffs and other Tip Credit Employees worked more than *de minimus* amounts of time performing work while paid at the lower tipped hourly rate after serving customers and including the time when no customers were present in the restaurant. None of this time was worked as part of a tipped occupation.

75.     For example, Plaintiffs typically continued working for approximately one to one-and-a-half hours after they had finished serving his last customers in order to perform maintenance, janitorial and/or food preparation work tasks (including the tasks listed above above) while being paid at a tipped hourly rate of less than $7.25 (or the applicable Ohio minimum wage rate).

76.     This maintenance, janitorial and/or food preparation work throughout each shift while serving customers took up a substantial portion of their time while paid at the lower tipped hourly rate.

77.     For example, Plaintiffs typically spent approximately 20 to 30 minutes of each hour while customers were present in the restaurant performing non-tip-producing and directly supporting work tasks (including the tasks listed above above) while being paid at a tipped hourly rate of less than $7.25 or the applicable Ohio minimum wage rate.

13

78.     Defendants had a policy and practice of requiring Plaintiffs and other Tip Credit Employees to remit a portion of the tips they received from customers to other employees  and pursuant to a tip-sharing arrangement .

79.     Remitting tips to other employees, including back-of-house employees who do not interact with customers, is not voluntary; rather, it is a condition of employment and, therefore, mandatory.

80.     Defendants knew or should have known that their compensation practices and policies for Plaintiffs and other Tip Credit Employees violated the FLSA and applicable state laws.

81.     Jeff Ruby and Defendants Jeff Ruby Culinary Entertainment, Inc., Carlo & Johnny's, Ltd., and Jeff Ruby Steakhouse, LLC, have been named as Defendants in an FLSA collective action for violations related to the tip-credit provisions previously and have therefore been put on notice of those requirements. *See Lapinski v. Jeff Ruby Culinary Entertainment, Inc., et al.*, No. 1:13-cv-00595-SJD (S.D. Ohio 2013).

82.     Defendants' corporate and restaurant management specifically told employees, including Plaintiffs and Tip Credit Employees that the sharing of tips with back-of-house employees (*e.g.*, service bartenders) took place in cash because those employees were not allowed to receive tips.

## V.  COLLECTIVE ACTION ALLEGATIONS

83.     Plaintiffs assert their FLSA claims as a collective action on behalf of the following employees who filed their written consent pursuant to 29 U.S.C. § 216(b) in *Lamb* I:

> All current and former Tip Credit Employees (as defined herein) at any of Defendants seven Jeff Ruby's restaurants at any time since February 27, 2021.

84.     Plaintiffs' FLSA claims should proceed as a collective action because Plaintiffs and these similarly situated individuals, having worked pursuant to the common policies described

14

herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

## VI. KENTUCKY CLASS ALLEGATIONS

85.    Plaintiff Lamb brings his Kentucky state law claims on his own behalf and, pursuant to Fed. R. Civ. P. 23, on behalf of the following class of individuals:

> All current and former Tip Credit Employees (as defined herein) at Defendants Lexington, Kentucky and Louisville, Kentucky Jeff Ruby's restaurants at any time since February 27, 2019.[2]

(the "Kentucky Class").

86.    Plaintiff Lamb asserts his claim for minimum wages under the KWHA due to Defendants' mandatory tip sharing arrangements on his own behalf and, pursuant to Fed. R. Civ. P. 23, on behalf of the following subclass of the Kentucky Class:

> All current and former Tip Credit Employees (as defined herein) at Defendants Lexington, Kentucky and Louisville, Kentucky Jeff Ruby's restaurants at any time from February 27, 2019 until on or before June 30, 2022.

(the "Mandatory Tip Pool Subclass").

87.    Plaintiff Lamb is a member of the Kentucky Class and the Mandatory Tip Pool Subclass he seeks to represent.

88.    Defendants have employed hundreds of Tip Credit Employees at their Lexington and Louisville Jeff Ruby's restaurants. Thus, the Kentucky Class and the Mandatory Tip Pool Subclass are sufficiently numerous that joinder of all members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

89.    Plaintiff Lamb and the members of the Kentucky Class (including the Mandatory

---

[2]    The statute of limitations for claims under the KWHA and for unjust enrichment is five years. KRS 413.120.

Tip Pool Subclass) share the same pivotal questions of law and fact, satisfying Fed. R. Civ. P. 23(a)(2). For example, Plaintiff Lamb and the members of the Kentucky Class he seeks to represent are subject to the same compensation and tip policies. As a result, the Kentucky Class shares several factual and legal questions, including, for example: (1) whether Defendants required their Tip Credit Employees to share tips with employees who have no or only *de minimis* interaction with customers; (2) whether Defendants required Tip Credit Employees to spend excessive amounts of time performing non-tip-producing and directly supporting work tasks at the lower tipped hourly rate; and (3) whether Defendants required their Tip Credit Employees to remit their earned tips to other employees.

90.     Plaintiff Lamb's claims are typical of the claims of the Kentucky Class (including the Mandatory Tip Pool Subclass), satisfying Fed. R. Civ. P. 23(a)(3). Defendants' violation of the minimum wage, overtime wage, and other requirements of the KWHA is not the result of any Plaintiff-specific circumstances. Rather, it arises from their common pay policies and practices, which they applied generally to all Tip Credit Employees, including Plaintiff Lamb. Thus, in advancing his own claims, Plaintiff Lamb will also be advancing the claims of the Kentucky Class (including the Mandatory Tip Pool Subclass).

91.     Plaintiff Lamb will fairly and adequately represent and protect the interests of the Kentucky Class (including the Mandatory Tip Pool Subclass), satisfying Fed. R. Civ. P. 23(a)(4). Plaintiff Lamb's interests are shared with the Kentucky Class (including the Mandatory Tip Pool Subclass) and Plaintiff Lamb has no interests that conflict with those of the Kentucky Class (including the Mandatory Tip Pool Subclass). Furthermore, Plaintiff Lamb has retained competent counsel experienced in representing classes of employees against their employers related to their employer's failure to pay them properly under the law.

92. By failing to pay Tip Credit Employees all required minimum and overtime wages pursuant to their common pay practices and policies, Defendants have created a scenario where questions of law and fact common to the Kentucky Class (including the Mandatory Tip Pool Subclass) predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for the fair and efficient adjudication of this matter. Plaintiff Lamb is entitled to pursue his claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

## VII. OHIO CLASS ALLEGATIONS

93. Plaintiff Belmont brings his Ohio state law claims on his own behalf and, pursuant to Fed. R. Civ. P. 23, on behalf of the following class of individuals:

> All current and former Tip Credit Employees (as defined herein) at Defendants' Jeff Ruby's restaurants located in Ohio at any time since February 27, 2021.

("the Ohio Class").

94. Class action treatment of the Ohio Class's claims is appropriate because, as alleged below, all of Federal Rule of Civil Procedures 23's class action requisites are satisfied.

95. The Ohio Class, upon information and belief, includes over dozens of individuals, all of whom are readily ascertainable based on Defendants' standard payroll records and are so numerous that joinder of all class members is impracticable.

96. Plaintiff Belmont is a member of the Ohio Class, his claims are typical of the claims of other class members, and he has no interest that is antagonistic to or in conflict with the interests of other class members.

97. Plaintiffs and their counsel will fairly and adequately represent the Ohio Class members and their interests.

98. Questions of law and fact are common to all class members, because, *inter alia,* this action concerns Defendants' companywide pay policies. The legality of these policies will be

17

determined through the resolution of generally applicable legal principles to a common set of facts. Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other methods for the fair and efficient adjudication of this litigation.

## VIII.  CAUSES OF ACTION

### COUNT I:
### VIOLATION OF THE MINIMUM WAGE AND
### OVERTIME REQUIREMENTS OF THE FLSA

99.     All previous paragraphs are incorporated as though fully set forth herein.

100.     Plaintiffs assert this claim on behalf of themselves and all similarly situated individuals who opt into this action by filing a consent form, pursuant to 29 U.S.C. § 216(b).

101.     Plaintiffs and all similarly situated individuals are employees entitled to the FLSA's protections.

102.     Defendants are employers covered by the FLSA.

103.     The FLSA entitles employees to a minimum hourly wage of $7.25 for every hour worked. 29 U.S.C § 206(a).

104.     The FLSA entitles employees to an overtime rate "not less than one and one-half times" their regular rate of pay for hours worked over 40 hours in a workweek. 29 U.S.C § 207.

105.     The minimum overtime hourly wage is $10.88 per hour (*i.e.*, one and one-half times $7.25 per hour). 29 U.S.C §§ 206(a), 207.

106.     While employers may utilize a tip credit to satisfy their minimum wage and overtime obligations to tipped employees, like Plaintiffs and other Tip Credit Employees, they forfeit the right to do so when certain requirements are not met. *See* 29 U.S.C. §§ 203(m), (t).

18

107. Defendants failed to satisfy the requirements necessary to rely on the tip credit to satisfy their minimum wage and overtime obligations (as set forth above) by requiring Plaintiffs and other Tip Credit Employees to: (1) share tips with employees who have no or only *de minimis* interaction with customers; (2) spend substantial amounts of time performing non-tip-producing and directly supporting work while being paid an hourly wage below $7.25 per hour (and below $10.88 per hour for hours over 40 in a workweek) and not working in a tipped occupation for defined periods of time; and (3) spend time working at the beginning of their shifts without being clocked in for pay purposes as reflected in Defendants' records of their scheduled start time when they arrived and their clock-in time when they were finally able to clock in for pay purposes.

108. As a result, Defendants forfeited their right to utilize the tip credit in satisfying their minimum wage and overtime obligations.

109. As such, Defendants have violated the FLSA by failing to pay Plaintiffs and all similarly situated individuals for all time worked at $7.25 per hour (and $10.88 per hour for hours over 40 in a workweek).

110. Plaintiffs and all similarly situated individuals are entitled to recover all unpaid minimum and overtime wages, an equal amount of liquidated damages, and attorneys' fees and expenses, pursuant to 29 U.S.C. § 216(b).

111. In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**COUNT II:**
**VIOLATION OF THE MINIMUM WAGE AND**
**OVERTIME REQUIREMENTS OF THE KWHA**

112. All previous paragraphs are incorporated as though fully set forth herein.

113. Plaintiff Lamb asserts this claim on behalf of himself and members of the Kentucky Class (including the Mandatory Tip Pool Subclass), pursuant to Fed. R. Civ. P. 23.

19

114.    Plaintiff Lamb and the Kentucky Class (including the Mandatory Tip Pool Subclass) are employees entitled to the KWHA's protections.

115.    Defendants are employers covered by the KWHA.

116.    The KWHA entitles employees to a minimum hourly wage of $7.25 for every hour worked. KRS 337.275.

117.    The KWHA requires that covered employees receive overtime compensation "not less than one and one-half times" their regular rate of pay for hours over 40 in a workweek. KRS 337.285.

118.    The minimum overtime hourly wage is $10.88 per hour (*i.e.*, one and one-half times $7.25 per hour). KRS 337.275, 337.285.

119.    While restaurants may utilize a tip credit to satisfy their minimum wage and overtime obligations to tipped employees, like Plaintiff Lamb and other Tip Credit Employees, they forfeit the right to do so when certain requirements are not met. *See* KRS 337.010(2)(d), 337.275(2); 803 KAR 1:080 § 3.

120.    Defendants failed to satisfy the requirements necessary to rely on the tip credit to satisfy their minimum wage and overtime obligations (as set forth above) by requiring Plaintiff Lamb and the Kentucky Class to: (1) remit tips to back-of-house employees who have no or only *de minimis* interaction with customers; (2) spend substantial amounts of time performing non-tip-producing and directly supporting work (*i.e.*, work while not in an occupation in which they qualify as tipped employees) while being paid an hourly wage below $7.25 per hour (and below $10.88 per hour for hours over 40 in a workweek); and (3) spend time working at the beginning of their shifts without being clocked in for pay purposes as reflected in Defendants' records of their scheduled start time when they arrived and their clock-in time when they were finally able to clock

in for pay purposes..

121.     Furthermore, until and through June 30, 2022, the KWHA prohibits employers from requiring employees to remit all or a portion their tips for distribution among other employees (*i.e.*, mandatory tip pools). KRS 337.065.

122.     Until and through June 30, 2022, employers forfeited the tip credit when they require their tipped employees—such as Plaintiff Lamb and the Tip Credit Employees—to share tips with the employer or any other restaurant employees. *See* KRS 337.275(2); 803 KAR 1:080 § 3.

123.     By requiring Plaintiff Lamb and the Mandatory Tip Pool Subclass of the Kentucky Class to share tips with other employees Defendants have forfeited their right to utilize the tip credit in satisfying its minimum wage and overtime obligations to Plaintiff Lamb and the Mandatory Tip Pool Subclass of the Kentucky Class.

124.     As such, Defendants have violated the KWHA's minimum wage mandate by paying Plaintiff Lamb and the Kentucky Class (including the Mandatory Tip Pool Subclass) an hourly wage below $7.25 for regular hours worked.

125.     Plaintiff Lamb and members of the Kentucky Class are entitled to recover all unpaid minimum and overtime wages, an equal amount of liquidated damages, and attorneys' fees and expenses, pursuant to KRS 337.385.

126.     In violating the KWHA, Defendants have acted willfully and with reckless disregard of clearly applicable KWHA provisions.

**COUNT III:**
**UNLAWFUL RETENTION OF TIPS UNDER THE FLSA**

127.     All previous paragraphs are incorporated as though fully set forth herein.

128.     Plaintiffs assert this claim on behalf of themselves and all similarly situated

21

individuals who opt into this action by filing a consent form, pursuant to 29 U.S.C. § 216(b).

129.    Plaintiffs and all similarly situated individuals are employees entitled to the FLSA's protections.

130.    Defendants are employers covered by the FLSA.

131.    Under the FLSA, "an employer may not keep tips received by its employees for any purposes." 29 U.S.C. §§ 203(m)(2)(B). This is true "regardless of whether or not the employer takes a tip credit." *Id.*

132.    U.S. Department of Labor regulations concerning tip-sharing arrangements (or "tip pooling") provide that an "employer may require an employee for whom the employer takes a tip credit to contribute tips to a tip pool only if it is limited to employees who customarily and regularly receive tips" and that the "employer may not retain any of the employees' tips for any other purpose." *See* 29 C.F.R. § 531.54(c).

133.    Defendants unlawfully used and retained a portion of the tips earned by Plaintiffs and all those similarly situated and shared those tips with back-of-house employees who do not customarily and regularly receive tips and who have no or insufficient customer interaction.

134.    Put differently, Defendants took these tips and used them to pay their back-of-house employees money in addition to their hourly wage.

135.    In violating the FLSA, Defendants acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**COUNT IV:**
**UNLAWFUL RETENTION OF TIPS UNDER THE KWHA**

136.    All previous paragraphs are incorporated as though fully set forth herein.

137.    Plaintiff Lamb asserts this claim on behalf of himself and members of the Kentucky Class (including the Mandatory Tip Pool Subclass), pursuant to Fed. R. Civ. P. 23.

22

138.	Plaintiff Lamb and the Kentucky Class (including the Mandatory Tip Pool Subclass) are employees entitled to the KWHA's protections.

139.	Defendants are employers covered by the KWHA.

140.	Under the KWHA, an employer is not permitted to retain tips for any purpose except for the purpose of withholding amounts required by federal or state law or for purposes of safekeeping as part of a lawful tip pool. KRS 337.065.

141.	Until and through June 30, 2022, when the amendments to KRS 337.065 went into effect, an employer was not permitted under the KWHA to require the sharing of any tips and to retain those tips for any purpose.

142.	Defendants unlawfully used and retained a portion of the tips earned by Plaintiff Lamb and members of the Kentucky Class (including the Mandatory Tip Pool Subclass) and shared those tips with back-of-house employees who do not customarily and regularly receive tips and who have no or insufficient customer interaction.

143.	Put differently, Defendants took these tips and used them to pay their back-of-house employees money in addition to their hourly wage.

144.	As a result, Plaintiff Lamb and members of the Kentucky Class (including the Mandatory Tip Pool Subclass) are entitled to recover the tips Defendants unlawfully withheld. KRS 337.385(1).

145.	In violating the KWHA, Defendants acted willfully and with reckless disregard of clearly applicable KWHA provisions.

## COUNT V:
## VIOLATION OF THE OHIO CONSTITUTION, ARTICLE II, SECTION 34a

146.	All previous paragraphs are incorporated as though fully set forth herein.

147.	Plaintiff Belmont asserts this claim on behalf of himself and the members of the

23

Ohio Class pursuant to Fed. R. Civ. P. 23.

148.     Plaintiff Belmont and the Ohio Class are employees within the meaning of O.R.C.

§ 4111.14(B) and Oh. Const. Art. II, § 34(a) protected by the mandates of the Ohio Constitution.

149.     Defendants are employers and constitute a single employer within the meaning of

O.R.C. § 4111.14(B) and Oh. Const. Art. II. § 34(a) required to comply with the mandates of the

Ohio Constitution.

150.     Article II, Section 34(a) of the Ohio Constitution and O.R.C. § 4111.02 entitle

employees to a minimum hourly wage that increases each year (2024—$10.45 per hour; 2023—

$10.10 per hour; 2022—$9.30 per hour; 2021—$8.80 per hour).

151.     Article II, Section 34(a) of the Ohio Constitution permits employers to utilize a "tip

credit" to satisfy their minimum wage obligations to tipped employees.

152.     In order to utilize the tip credit, an employer must comply with the requirements

set forth in Section 3(m) of the FLSA, 29 U.S.C. § 203(m).

153.     Section 3(m) of the FLSA prohibits employers from keeping tips received by

employees for any purposes, including allowing managers or supervisors to keep any portion of

employees' tips, regardless of whether or not the employer takes a tip credit. 29 U.S.C. § 203(m).

154.     Employers may not take a tip credit if they violate the prohibition against

unlawfully retaining any portion of their employees' tips. *E.g.*, 29 U.S.C. § 203(m)(2).

155.     Here, by unlawfully keeping and using  tips earned by Plaintiff Belmont and the

Ohio Class to pay back-of-house, Defendants have forfeited their right to utilize the tip credit in

satisfying their minimum wage obligations.

156.     The FLSA further prohibits employers from taking a tip credit if the employer

allows non-customarily and regularly tipped employees in its tip pool or tip sharing arrangements.

24

29 U.S.C. § 203(m).

157.     Defendants have violated this provision companywide by keeping tips received by Plaintiff Belmont and the Ohio Class by allowing non-customarily and regularly tipped employees to participate in its tip pool or tip sharing arrangements.

158.     Employers also may not take a tip credit for work performed by a tipped employee that directly supports tip-producing work when it is done for a substantial amount of time. *See* 29 C.F.R. § 531.56.

159.     Here, by utilizing a tip credit even when Plaintiff Belmont and the Ohio Class perform work that directly supports tip-producing work for a substantial amount of time, Defendant has forfeited its right to utilize the tip credit in satisfying its minimum wage obligations.

160.     Further, when not utilizing a tip credit during Plaintiffs' Off-Service Hours worked, Defendants compensated Plaintiff Belmont and the Ohio Class at a rate below the relevant Ohio minimum wage, in violation of Ohio Wage Laws.

161.     As such, Defendants have violated O.R.C. § 4111.14(B) and Oh. Const. Art. II, § 34a by paying Plaintiff Belmont and the Ohio Class an hourly wage below the required minimum wage.

## COUNT VI:
## VIOLATION OF THE OVERTIME REQUIREMENTS
## OF THE OHIO WAGE ACT

162.     All previous paragraphs are incorporated as though fully set forth herein.

163.     Plaintiff Belmont asserts this claim on behalf of himself and members of the Ohio Class, pursuant to Fed. R. Civ. P. 23.

164.     The Ohio Wage Act provides that covered employees shall be compensated for every hour worked in one workweek. *See* O.R.C. §§ 4111, *et seq.*; *see also* 29 U.S.C. § 206(b).

165. The Ohio Wage Act provides that employees shall receive overtime compensation at a rate "not less than one and one-half times" the employee's regular rate of pay for all hours worked over forty (40) in a workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); 29 U.S.C. § 207(a)(1).

166. At all times material to this Complaint, Defendants were employers and constitute a single employer covered by the Ohio Wage Act and thus has been required to comply with its mandates.

167. At all times material to this Complaint, Plaintiff Belmont and the Ohio Class were covered "employees" of Defendant pursuant to the Ohio Wage Act and thus entitled to the Ohio Wage Act's protections.

168. At all times material to this Complaint, Defendants violated the Ohio Wage Act by repeatedly failing to compensate Plaintiff Belmont and the Ohio Class for all hours worked at the appropriate pay rate, including Defendants' repeated action of refusing to compensate Plaintiff Belmont and the Ohio Class for all hours worked over forty (40) hours in a workweek at a rate not less than one-and-a-half times the appropriate regular rate.

169. Plaintiff Belmont and the Ohio Class are not exempt from the wage protections of Ohio law. During material times, Plaintiff Belmont and the Ohio Class were not exempt from receiving overtime because they were not "executive," "administrative," "professional," "outside sales," or "computer" employees, as those terms are defined under the FLSA. *See* O.R.C. § 4111.03(A); *see also* C.F.R. §§ 541 *et seq.*

170. In violating the Ohio Wage Act, Defendants' acts and omissions have been of a willful, intentional, and bad faith nature or otherwise in reckless disregard of the Ohio Wage Act.

171.     Plaintiff Belmont and the Ohio Class are entitled to unpaid overtime and other compensation, liquidated damages, interest, and attorneys' fees and expenses, and all other remedies available as compensation for Defendants' violations of O.R.C. § 4111.03, by which Plaintiff Belmont and the Ohio Class have suffered and continue to suffer damages.

## COUNT VII:
## VIOLATION OF THE OHIO PROMPT PAY ACT

172.     All previous paragraphs are incorporated as though fully set forth herein.

173.     Plaintiff Belmont asserts this claim on behalf of himself and members of the Rule 23 Class, pursuant to Fed. R. Civ. P. 23.

174.     At all times relevant to this Complaint, Defendants were Plaintiff Belmont and the Ohio Class's employers and constitute a single employer and were required to comply with the Ohio Prompt Pay Act's provisions. *See* O.R.C. § 4113.15.

175.     The OPPA provides that employers shall pay covered employees all wages, on or before the first day of each month for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and, on or before the fifteenth day of each month, for wages earned during the preceding calendar month. *See* O.R.C. § 4113.15(A).

176.     At all times material to this Complaint, Defendants have refused to pay Plaintiff Belmont and the Ohio Class all owed overtime wages at one and one-half (1 ½) times their normal hourly rate and all wages at the statutorily mandated minimum wage rate, within thirty (30) days of performing the work. *See* O.R.C. § 4113.15(B).

177.     Plaintiff Belmont and the Ohio Class's wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

178.     Defendants' violations of the OPPA have been of a willful, intentional, or bad faith nature or Defendants have otherwise exhibited a reckless disregard of the OPPA's provisions.

# IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief on behalf of themselves and all others similarly situated:

A.      An order permitting this litigation to proceed through trial as a collective action pursuant to 29 U.S.C. § 216(b);

B.      An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 and ordering prompt notice of this litigation, pursuant to Fed. R. Civ. P. 23, to the Kentucky Class (including the Mandatory Tip Pool Subclass) and the Ohio Class;

C.      A finding that Defendants have violated the FLSA, KWHA, and the Ohio wage Laws;

D.      A finding that Defendants' violations of the FLSA, KWHA, and the Ohio Wage Laws are willful and not in good faith;

E.      A judgment against Defendants and in favor of Plaintiffs and all similarly situated individuals who opt into this action by filing a consent form, pursuant to 29 U.S.C. § 216(b), for all unpaid and underpaid wages and unlawfully retained tips that Defendants have failed and refused to pay in violation of the FLSA;

F.      A judgment against Defendants and in favor of Plaintiff Lamb and the Kentucky Class (including the Mandatory Tip Pool Subclass) for all unpaid and underpaid wages and unlawfully retained tips that Defendants have failed and refused to pay in violation of the KWHA;

G.      A judgment against Defendants and in favor of Plaintiff Lamb and the Kentucky Class (including the Mandatory Tip Pool Subclass) for all unlawfully retained tips;

H.      A judgment against Defendants and in favor of Plaintiff Belmont and the Ohio class for all unpaid and underpaid wages and unlawfully retained tips that Defendants have failed and

refused to pay in violation of the Ohio Wage Laws.

I. Prejudgment and post-judgment interest to the fullest extent permitted under the law;

J. Liquidated damages, treble damages, interest, and other monetary penalties to the fullest extent permitted under the FLSA, KWHA, and the Ohio Wage Laws;

K. Litigation costs, expenses, and Plaintiffs' attorneys' fees to the fullest extent permitted under the FLSA, KWHA, Ohio Wage Laws, and Federal Rules of Civil Procedure; and,

L. Such other and further relief as this Court deems just and proper in equity and law.

## X. JURY DEMAND

Plaintiffs demand a jury as to all claims so triable.

Date: August 21, 2025                    Respectfully submitted,

s/ David W. Garrison
David W. Garrison (TN Bar No. 24968)
Joshua A. Frank (TN Bar No. 33294)
Nicole A. Chanin (TN Bar No. 40239)
**BARRETT JOHNSTON MARTIN & GARRISON, PLLC**
200 31st Avenue North
Nashville, TN 37203
Telephone: (615) 244-2202
dgarrison@barrettjohnston.com
jfrank@barrettjohnston.com
nchanin@barrettjohnston.com

Robert E. DeRose (OH Bar No. 0055214)*
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
bderose@barkanmeizlish.com

* Forthcoming Motion for Admission *Pro Hac Vice*

*Attorneys for Plaintiffs*


## TRANSACTION DETAILS

**Reference Number**
79A60DD1-343D-4803-83C1-EFBA23E3A615

**Transaction Type**
Template Signer Link

**Sent At**
10/31/2025 03:53:55 PM EDT

**Executed At**
10/31/2025 03:54:50 PM EDT

**Identity Method**
none

**Distribution Method**
manual

**Signed Checksum**
61373da5e438ffc012573f4f5d9ca8982c383ee7870d5f10bf925ef7aea0ac53

**Signer Sequencing**
Disabled

**Document Passcode**
Disabled

## DOCUMENT DETAILS

**Document Name**
Jeff Ruby's Settlement Agreement - Jonathan Lamb

**Filename**
Jeff_Ruby_s_Settlement_Agreement.pdf

**Pages**
96 pages

**Content Type**
application/pdf

**File Size**
1.2 MB

**Original Checksum**
9fe3bf3957fa6b2ea5cfe63f577cb5a447f5d3825bbeb3208b69738c3e3cd239

# SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Johnathan Lamb | **Status**<br>signed | **Viewed At**<br>10/31/2025 03:53:55 PM EDT |
| **Email**<br>Jlamb0031@gmail.com | **Multi-factor Digital Fingerprint Checksum**<br>b0bafcc70e643d4f5b9c7de21a142344f068fd31991c2c9ce98c60f43dc9046a | **Identity Authenticated At**<br>N/A |
| **Components**<br>2 | **IP Address**<br>172.59.82.213 | **Signed At**<br>10/31/2025 03:54:50 PM EDT |
| | **Device**<br>Mobile Safari via iOS | |
| | **Drawn Signature** | |
| | **Signature Reference ID**<br>ACE3E624 | |
| | **Signature Biometric Count**<br>2 | |

# AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 10/31/2025 03:53:55 PM EDT | Signer viewed the document on Mobile Safari via iOS from 172.59.82.213. |
| 10/31/2025 03:54:50 PM EDT | Johnathan Lamb (Jlamb0031@gmail.com) signed the document on Mobile Safari via iOS from 172.59.82.213. |

**Progress** | **RightSignature**

## SIGNATURE CERTIFICATE



**REFERENCE NUMBER**
2C84DE47-6762-4E44-9533-1F76B8ADD0FA

---

| TRANSACTION DETAILS | DOCUMENT DETAILS |
|---|---|
| **Reference Number**<br>2C84DE47-6762-4E44-9533-1F76B8ADD0FA | **Document Name**<br>Jeff Ruby's Settlement Agreement - Jim Belmont |
| **Transaction Type**<br>Template Signer Link | **Filename**<br>Jeff_Ruby_s_Settlement_Agreement_-_Jonathan_Lamb_Johnathan_Lamb-signed.pdf |
| **Sent At**<br>11/03/2025 03:51:39 PM EST | **Pages**<br>96 pages |
| **Executed At**<br>11/03/2025 03:52:28 PM EST | **Content Type**<br>application/pdf |
| **Identity Method**<br>none | **File Size**<br>1.35 MB |
| **Distribution Method**<br>manual | **Original Checksum**<br>61373da5e438ffc012573f4f5d9ca8982c383ee7870d5f10bf925ef7aea0ac53 |
| **Signed Checksum**<br>db9d715230eeb9e310e25c88ffe2ce37108b0a0513ccaf42fbb7685b528fbaca | |
| **Signer Sequencing**<br>Disabled | |
| **Document Passcode**<br>Disabled | |

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>jim belmont | **Status**<br>signed | **Viewed At**<br>11/03/2025 03:51:39 PM EST |
| **Email**<br>jbelmont03@gmail.com | **Multi-factor Digital Fingerprint Checksum**<br>1f24d7e4edd2803a9f7c119a40cf1097709c83bb7757514561475a8fb7893200 | **Identity Authenticated At**<br>N/A |
| **Components**<br>2 | **IP Address**<br>98.28.192.3 | **Signed At**<br>11/03/2025 03:52:28 PM EST |
| | **Device**<br>Chrome via Windows | |
| | **Drawn Signature** | |
| | **Signature Reference ID**<br>A98CCD6F | |
| | **Signature Biometric Count**<br>3 | |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 11/03/2025 03:51:39 PM EST | Signer viewed the document on Chrome via Windows from 98.28.192.3. |
| 11/03/2025 03:52:28 PM EST | jim belmont (jbelmont03@gmail.com) signed the document on Chrome via Windows from 98.28.192.3. |

**Progress® | RightSignature**

## SIGNATURE CERTIFICATE



**REFERENCE NUMBER**
2BD3ECD7-7BB0-4EC3-9498-AA4CB62D8E6E

| TRANSACTION DETAILS | DOCUMENT DETAILS |
|---|---|
| **Reference Number**<br>2BD3ECD7-7BB0-4EC3-9498-AA4CB62D8E6E | **Document Name**<br>Jeff Ruby s Settlement Agreement - Bob DeRose |
| **Transaction Type**<br>Template Signer Link | **Filename**<br>Jeff_Ruby_s_Settlement_Agreement_-_Jim_Belmont_jim_belmont-signed.pdf |
| **Sent At**<br>11/03/2025 04:24:03 PM EST | **Pages**<br>96 pages |
| **Executed At**<br>11/03/2025 04:25:48 PM EST | **Content Type**<br>application/pdf |
| **Identity Method**<br>none | **File Size**<br>1.36 MB |
| **Distribution Method**<br>manual | **Original Checksum**<br>db9d715230eeb9e310e25c88ffe2ce37108b0a0513ccaf42fbb7685b528fbaca |
| **Signed Checksum**<br>8014b2ad53168554d587831608db5296129bc435e934bcfe2dcd2b515cc5dbd4 | |
| **Signer Sequencing**<br>Disabled | |
| **Document Passcode**<br>Disabled | |

## SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>Bob DeRose | **Status**<br>signed | **Viewed At**<br>11/03/2025 04:24:03 PM EST |
| **Email**<br>bderose@barkanmeizlish.com | **Multi-factor Digital Fingerprint Checksum**<br>83b89854cb9c8e19d530d2ddb1fbaaaffd3707b9d4d36833e6b4739bb3c02ac7 | **Identity Authenticated At**<br>N/A |
| **Components**<br>2 | **IP Address**<br>74.133.80.5 | **Signed At**<br>11/03/2025 04:25:48 PM EST |
| | **Device**<br>Chrome Mobile iOS via iOS | |
| | **Drawn Signature** | |
| | **Signature Reference ID**<br>12E5C6ED | |
| | **Signature Biometric Count**<br>1 | |

## AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 11/03/2025 04:24:03 PM EST | Signer viewed the document on Chrome Mobile iOS via iOS from 74.133.80.5. |
| 11/03/2025 04:25:48 PM EST | Bob DeRose (bderose@barkanmeizlish.com) signed the document on Chrome Mobile iOS via iOS from 74.133.80.5. |

**Progress® | RightSignature**

# SIGNATURE CERTIFICATE



**REFERENCE NUMBER**
904EAF95-25E3-47EA-8484-A9DEA0050C67

## TRANSACTION DETAILS

**Reference Number**
904EAF95-25E3-47EA-8484-A9DEA0050C67

**Transaction Type**
Template Signer Link

**Sent At**
11/03/2025 04:34:55 PM EST

**Executed At**
11/03/2025 04:35:39 PM EST

**Identity Method**
none

**Distribution Method**
manual

**Signed Checksum**
c3e914cd801f4e3b682b8e546011fd3d5a7541cd4b7517570c32414b9ff8049b

**Signer Sequencing**
Disabled

**Document Passcode**
Disabled

## DOCUMENT DETAILS

**Document Name**
Jeff Ruby s Settlement Agreement - David Garrison

**Filename**
Jeff_Ruby_s_Settlement_Agreement.pdf

**Pages**
99 pages

**Content Type**
application/pdf

**File Size**
973 KB

**Original Checksum**
a269eaace122214bb336d1c13ec62205107b3b7788a5fd66b4d0f407e0549499

# SIGNERS

| SIGNER | E-SIGNATURE | EVENTS |
|---|---|---|
| **Name**<br>David Garrison | **Status**<br>signed | **Viewed At**<br>11/03/2025 04:34:55 PM EST |
| **Email**<br>dgarrison@barrettjohnston.com | **Multi-factor Digital Fingerprint Checksum**<br>9b352b77d79ee64f159dbea2a8d97722e0793c4bf0dd75565bee6b09fdfcabb9 | **Identity Authenticated At**<br>N/A |
| **Components**<br>2 | **IP Address**<br>75.149.100.214 | **Signed At**<br>11/03/2025 04:35:39 PM EST |
| | **Device**<br>Mobile Safari via iOS | |
| | **Drawn Signature** | |
| | **Signature Reference ID**<br>0AB97CFC | |
| | **Signature Biometric Count**<br>8 | |

# AUDITS

| TIMESTAMP | AUDIT |
|---|---|
| 11/03/2025 04:34:55 PM EST | Signer viewed the document on Mobile Safari via iOS from 75.149.100.214. |
| 11/03/2025 04:35:39 PM EST | David Garrison (dgarrison@barrettjohnston.com) signed the document on Mobile Safari via iOS from 75.149.100.214. |